STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
CLARENCE E. LYNCH, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued July 19, 1977—Resubmitted August 12, 1977—
Decided January 3, 1978.

432

Before Judges LYNCH, MORGAN and ARD.

*Mr. Frank H. Graves,* Assistant Prosecutor, argued the cause for appellant (*Mr. C. Judson Hamlin,* Middlesex County Prosecutor, attorneys).

*Mr. Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

MORGAN, J. A. D. The State appeals from the order granting defendant's motion to dismiss the indictment made after the State's opening statement to the jury on the ground that the State failed to assert an essential element of the charge against defendant.

Defendant was indicted as an accessory after the fact (*N. J. S. A.* 2A:85-2) for allegedly aiding and assisting one Carrie Speight in avoiding apprehension by the police by providing her with transportation.

In his opening statement to the jury at trial the prosecutor stated that the State would prove that after Speight's in-

dictment, defendant, who had been living with Carrie Speight and her husband, had been told by the Mercer County Prosecutor's office that Speight was wanted on a warrant for her arrest, and that she had been indicted for a high misdemeanor and warned defendant that he should not assist or aid her in avoiding apprehension. According to the prosecutor, the State also intended to prove that defendant knew Speight was a fugitive from justice when he and Speight were arrested together in an automobile in South River, New Jersey.

Defendant moved to dismiss the indictment on the ground that the State had failed to state a case on opening in not asserting that defendant had actual knowledge that Speight was guilty of a high misdemeanor at the time he committed the acts described in the indictment. Although admitting that the State did not intend to prove defendant's actual knowledge of Speight's guilt of the crime charged against her, the prosecutor argued that such an allegation was unnecessary. The essential allegation, argues the State, is defendant's knowledge of an outstanding charge provided by law enforcement authorities and warrant for arrest on account of the commission of a high misdemeanor or any of the other offenses set forth in *N. J. S. A.* 2A:85–2—not actual knowledge of guilt thereof.

The judge deferred ruling on defendant's motion to dismiss until after the luncheon recess. When court reconvened the prosecutor announced to the court that during the luncheon interval he learned of the availability of testimony that defendant was present on the date and in the vicinity of Speight's offense and hence had actual knowledge of her guilt of the crime charged to her. As explained by the prosecutor:

\* \* \* her charge, the incident that she plead guilty to was an undercover buy, that officers from Mercer County were present when the buy was made and they are prepared to testify that immediately after the transaction was made with an undercover officer that Miss Speight went back to a car in which the defendant Lynch was seated and handed him the money.

The trial judge declined, however, to permit the prosecutor to reopen using these additional facts to eliminate the objection upon which defendant's motion to dismiss was based on the ground that to use such information at the last minute before trial and without affording defendant discovery with respect to such information would be unfair to the defense. Instead of continuing the trial to permit discovery, the judge opted to rule on the motion based upon the State's opening as it was originally given, excluding from its consideration the proffered testimony described after the luncheon recess. Defendant's motion to dismiss the indictment was granted, the judge holding that "in order to prove guilt under [*N. J. S. A.*] 2A:85-2 one of the essential elements required of the State is to prove actual knowledge of [the] commission of the crime and that mere knowledge that a charge is outstanding against * * * the person aided is insufficient." The State appeals, alleging error in this determination.

During oral argument this court, on its own motion, questioned the State's right to appeal the order dismissing the indictment after the jury had been empaneled and sworn. Briefs on the matter were solicited and received. We conclude that the State cannot appeal this order.

The permissibility of State appeals from orders affecting the disposition of criminal cases depends, to a large extent, on whether such an appeal, if successful, would require defendant's retrial in violation of federal and state guarantees against twice being placed in jeopardy for the same offense. Hence, apart from court rules governing the matter, about which more later, inquiries concerning the State's power to appeal orders in criminal cases require consideration as to whether required proceedings subsequent to consideration of the appeal will offend that constitutional guarantee. *State v. Sims*, 65 *N. J.* 359, 370 (1974).

We are not unmindful of the recent redefinition of the parameters of double jeopardy protection by a trilogy of federal cases, *United States v. Wilson*, 420 *U. S.* 332, 95 *S. Ct.*

1013, 43 *L. Ed.* 2d 232 (1975) ; *United States v. Jenkins,* 420 *U. S.* 358, 95 *S. Ct.* 1006, 43 *L. Ed.* 2d 250 (1975), and *Serfass v. United States,* 420 *U. S.* 377, 95 *S. Ct.* 1055, 43 *L. Ed.* 2d 265 (1975), and the New Jersey cases which anticipated the foregoing or followed in their wake: *State v. Sims, supra; State v. Kleinwaks,* 68 *N. J.* 328 (1975) ; *State v. Kluber,* 130 *N. J. Super.* 336 (App. Div. 1974), certif. den. 67 *N. J.* 72 (1975) ; *State v. Laganella,* 144 *N. J. Super.* 268, 286 (App. Div. 1976). Basic to the holdings in *Wilson-Jenkins-Serfass* was the view that double jeopardy considerations are not offended where a successful State's appeal would not result in a retrial of defendant's guilt.

For example, in *United States v. Wilson,* a post-trial order of the trial court, which set aside the jury verdict of guilt and dismissed the indictment on the ground of delay between the offenses and indictment, was appealable by the State since appellate correction of the asserted error would not subject defendant to the harassment traditionally associated with multiple prosecutions. *United States v. Wilson,* 420 *U. S.* at 352, 95 *S. Ct.* 1026, 43 *L. Ed.* 2d at 247. On the other hand, in *United States v. Jenkins,* the trial court order dismissing defendant and discharging the indictment following a bench (a nonjury) trial was held not appealable by the State since a successful appeal would necessitate further proceedings resolving the factual issues pertinent to the elements of the offense charged. In *Serfass v. United States,* however, a pretrial order dismissing the indictment on the basis of affidavits submitted and oral stipulations of counsel was held appealable by the State since jeopardy had not attached at the time the challenged ruling was made. Nothing in any of these cases suggests that a trial error favoring a defendant could be corrected on the State's appeal if the successful result of the appeal would be defendant's retrial.

New Jersey cases followed suit. *State v. Kleinwaks, supra,* permitted a State's appeal from a judgment of acquittal

following vacation of a jury verdict of guilt. Correction of the challenged trial court action of vacating the guilty verdict would not be attended by defendant's retrial; the appeal could either result in an affirmance or reinstatement of the jury verdict. *State v. Sims, supra,* which preceded the *Wilson-Jenkins-Serfass* trilogy, is to the same effect. There, however, in issue was the appealability of a trial court order vacating a jury verdict of guilty with an accompanying order for a new trial. The ordered retrial, at defendant's request, would clearly not violate double jeopardy guarantees, and reinstatement of the jury's verdict with the attendant conviction thereon, at the request of the State on appeal, would not result in a retrial at all.

Again, the common ground of all of these pronouncements, state and federal, was that the permitted state appeal, if successful, would not result in a retrial. In *Sims* a retrial would be avoided by state success; the retrial which had been sought by defendant would result only from the State's failure. In *Kleinwaks* an appeal, successful or not, would result in no subsequent trial. In *Serfass* there was no first trial since jeopardy had not attached when the challenged order was made and hence any resulting trial would not constitute a second attempt by the State to secure conviction. The appeal in *Jenkins* was rejected because its success would necessitate further proceedings; *Wilson* is almost identical in its procedural underpinnings with our own *Kleinwaks.*

Since that trilogy, however, issues concerning the state's right to appeal trial court orders in criminal cases have continued unabated. In *Lee v. United States,* 432 *U. S.* 23, 97 *S. Ct.* 2141, 53 *L. Ed.* 2d 80 (1977), defense counsel moved, in the bench trial, after the State's opening, for a dismissal of the information charging theft on the ground that it failed to allege all of the requisite elements thereof under the state statute. Here, it should be noted that the motion was made before jeopardy attached. The motion was "denied at this time," with the judge indicating that on research

he would "give consideration as appears * * * warranted." *Id.,* 432 *U. S.* at 26, 97 *S. Ct.* 2144, 53 *L. Ed.* 2d at 84. The two-hour trial proceeded to conclusion, after which defendant moved for an acquittal on the ground of insufficient government proofs. That motion was denied, with the judge noting that it bordered on the frivolous. "Your client has been proven [sic] beyond any reasonable doubt in the world, there is no question about his guilt; none whatsoever." *Id.,* 432 *U. S.* at 26, 97 *S. Ct.* at 2144, 53 *L. Ed.* 2d at 85. Without presenting any evidence, the defense then renewed its motion, made earlier, concerning the sufficiency of the information. The trial judge reluctantly granted the motion and dismissed the charge. Thereafter, defendant was again charged with the same offense and, on substantially the same evidence as was adduced at the first trial, was convicted. His claim that the second trial was barred by the Double Jeopardy Clause was rejected by the Seventh Circuit, 539 *F.* 2d 612 (1976), and again by the Supreme Court in *Lee v. United States, supra.* The court identified the critical inquiry as being "whether the order contemplates an end to all prosecution of the defendant for the offense charged." *Id.,* 432 *U. S.* at 30, 97 *S. Ct.* at 2146, 53 *L. Ed.* 2d at 87. Answering that inquiry from the record in that case, the court noted that "there can be little doubt that the court granted the motion to dismiss in this case in contemplation of just such a second prosecution." *Id. Lee* notes that the proceedings were terminated at defendant's request and with his consent notwithstanding the trial judge's announcement of his views concerning defendant's guilt of the charge on the proofs adduced. The original motion, made at the eleventh hour before trial and without any warning to the court or the government, was made before jeopardy attached. Although originally denied, "the court's remarks left little doubt that the denial was subject to further consideration at an available opportunity in the proceedings * * *." *Id.,* 432 *U. S.* at 33, 97 *S. Ct.* at 2147, 53 *L. Ed.* 2d at 89. Hence, although the motion was made before jeopardy at-

tached, it was decided after only because the lateness of the motion made a considered earlier ruling difficult. In these circumstances the court treated the dismissal as tantamount to a declaration of a mistrial and held the second trial not offensive to double jeopardy guarantees. Justice Brennan's concurring opinion stressed the element of lateness in the defense motion as virtually guaranteeing that the trial judge would delay a final ruling thereon until jeopardy had attached; had defense counsel afforded the trial judge opportunity to rule on the motion prior to trial, and had the judge failed to avail himself of this opportunity, the belated ruling, after attachment of jeopardy, would have foreclosed the second trial.

And finally, in *United States v. Martin Linen Supply Co.,* 430 *U. S.* 564, 97 *S. Ct.* 1349, 51 *L. Ed.* 2d 642 (1977), the court held that a judgment of acquittal, being a disposition on the merits, entered after a jury had been discharged for failure to agree, barred defendant's retrial.[1] *United States v. Sanford,* 429 *U. S.* 14, 97 *S. Ct.* 20, 50 *L. Ed.* 2d 17 (1976), was distinguished on the ground that there the jury trial ended in a mistrial without a judgment of acquittal having been entered. The second trial was aborted by way of a pretrial order. Retrial, in *Sanford,* was not barred since an acquittal had not been granted after jeopardy attached and a jury never resolved the meritorious issue of guilt or innocence.

With this background in mind, we note that in the present matter the trial judge dismissed the indictment, after

---

[1]*United States v. Martin Linen Supply Co., supra,* casts serious doubt on the continued validity of *State v. Kluber,* which appears identical therewith in its procedural history. *Kluber,* too, involved a first trial resulting in a deadlocked jury which was discharged for failing to agree after which the trial judge granted a judgment of acquittal for insufficient proofs. The judgment of acquittal was held appealable.

jeopardy attached,[2] on the ground that the proofs the State announced it would produce during trial were, as a matter of law, insufficient for conviction. Nothing in the record suggests, even obliquely, that the trial judge contemplated a second trial of defendant, a consideration deemed critical in *Lee, supra.* Presentation of the proofs consistent with the State's representation, on opening and in colloquy of what they would be, was deemed a "charade"; the judge ruled that "the indictment is dismissed, the defendant discharged, the case is over." He advised counsel that he intended to tell the jury "merely that the State lacked an essential element and so I had to get rid of the case * * *." The order of dismissal reflected that "defendants [*sic*] motion for judgment of acquittal be granted * * *." We have no doubt from this record that when the trial judge dismissed the indictment, and indeed entered a judgment of acquittal, he regarded his disposition as a final one, favoring defendant, and no further proceedings were being contemplated. The decision was one on the merits. The ruling did not concern a technical insufficiency in the indictment made in the face of overwhelming actual proofs of guilt as in *Jenkins.* The indictment in the present matter went without challenge; rather, it was the perceived insufficiency of the proffered proofs which underlay the challenged order. We have no doubt but that entry of the order granting defendant's motion for an acquittal precluded retrial, and hence the State's appeal.

 Moreover, the dismissal of this indictment, occurring during trial, is nonappealable by reason of *R.* 2:3-1 which permits an appeal by the State or, when appropriate, an application of leave to appeal, from a dismissal of an indictment only when such judgment is entered before or after

---

[2] In a jury trial jeopardy attaches when a jury is empaneled and sworn; in a bench trial jeopardy attaches when the judge begins to hear evidence. *Serfass v. United States, supra,* 420 *U. S.* at 388, 95 *S. Ct.* at 1062, 43 *L. Ed.* 2d at 274; *United States v. Martin Linen Supply Co., supra,* 430 *U. S.* at 570, 97 *S. Ct.* at 1354, 51 *L. Ed.* 2d at 650; *State v. Rechtschaffer,* 70 *N. J.* 395, 404 (1976).

trial; by its express terms, the State is prohibited from appealing the dismissal of an indictment during trial. Although we agree with the comment in *State v. Laganella,* 144 *N. J. Super.* 268, 283 (App. Div. 1976), that *R.* 2:3–1 intended a limitation on the State's right to appeal no broader than the one imposed by the requirements of double jeopardy, we have no doubt that the reason for the broad language insulating dismissals of indictments during trial from appellate review stemmed from recognition that such dismissals almost invariably trigger double jeopardy concerns. The only exception to the rule proscribing second trials after a meritorious disposition of a first one on the merits can be found in *United States v. Lee, supra.* In *Lee* the judge dismissed the indictment for a technical insufficiency in circumstances where, it was found, he contemplated further proceedings. Because such was found to have been the trial judge's intentions, his dismissal was viewed as the functional equivalent of a mistrial declared at defendant's request and, at its best, touching only a technical matter despite proofs which established defendant's guilt to the satisfaction of the trial judge. In the present case, as we have noted, the trial judge clearly expressed the finality of his order which, on this record and in light of the meritorious nature of his ruling (right or wrong), cannot with any justification be regarded as the equivalent of a declaration of mistrial.

*Laganella, supra,* also involving a dismissal of an indictment during trial from which the State was permitted an appeal, is, in our view, clearly distinguishable therefrom even were we to agree with its essential holding. The trial judge in *Laganella* never intended to pass on the essential merits of the State's case; rather, the dismissal was based upon his perception of the impropriety of the State's trial strategy. Here, of course, no impropriety on the part of the State played any role in the dismissal; rather, the dismissal was based simply upon the trial judge's view that the announced State's proofs were insufficient as a matter of law.

We are not, however, unmindful of the procedural overlay to the trial court disposition which stemmed from the State's efforts, before the order dismissing the indictment, to overcome the perceived deficiency of the announced proofs. The refusal of the trial judge to permit the State to supplement its opening statement cannot, and for reasons already given, convert what was clearly intended to be a final disposition of the case on the merits as they were perceived to be, into a mistrial based upon procedural grounds of fairness. Indeed, even were we to view the failure of the trial judge, on his own motion, to mistry the case in order to permit defendant discovery of the State's newly discovered evidence as a mistaken exercise of his discretion, double jeopardy problems would nonetheless exist. Defendant did not seek a mistrial. Any such declaration would not have been with his consent. All defendant wanted was what he obtained —dismissal of the charges and discharge from custody. In *Downum v. United States,* 372 *U. S.* 734, 83 *S. Ct.* 1033, 10 *L. Ed.* 2d 100 (1963), after a jury was selected and sworn, the trial judge granted the prosecutor's motion that the jury be discharged because a key witness essential to two of six counts was unavailable. *Downum,* in a 5–4 decision, held that the second trial, in which defendant was convicted of all counts, should not have been held because no "imperious necessity" had compelled the postponement and mistrial. 372 *U. S.* at 736, 83 *S. Ct.* 1034, 10 *L. Ed.* 2d 102. In this case defendant made no motion for a mistrial. If the judge's action in dismissing the indictment be viewed as a declaration of mistrial (which we submit it cannot be on the record), then it was done by the judge on his own motion, without defendant's request or consent, and, we would conclude, would not have been compelled by any "manifest necessity." *United States v. Perez,* 22 *U. S.* (9 Wheat.) 579, 6 *L. Ed.* 165 (1824). Defendant was not consulted as to his wishes in the matter; he was not asked whether he would prefer to try the case to a conclusion on the State's supplemental proofs rather than being granted a mistrial.

He never expressed a preference for a mistrial without being asked. His only motion was for a dismissal, *i. e.,* an acquittal, based upon his assertion that the State's proposed proofs were inadequate for a conviction.

"It is basic that a defendant is entitled to have a trial proceed to its normal conclusion." *State v. Rechtschaffer,* 70 *N. J.* at 404. This fundamental right cannot be abridged, without a defendant's consent, by a trial judge's solicitude for a perceived unfairness to a defendant which defendant may not share. In any event, the propriety of a mistrial, insofar as it may bear on the possibility of a retrial thereafter, should not depend on the "motivation underlying the trial judge's action." *United States v. Jorn,* 400 *U. S.* 470, 483, 91 *S. Ct.* 547, 556, 27 *L. Ed.* 2d 543, 555 (1971). Justice Harlan, speaking for the plurality in *Jorn,* stressed that "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." 400 *U. S.* at 485, 91 *S. Ct.* 557, 27 *L. Ed.* 2d at 557.

The foregoing discussion is based upon the dissenter's view that the dismissal from which appeal is here being sought was tantamount to a mistrial. We stress our view that the record supports no such conclusion. We only point out that were we not correct in that view, nothing would be changed since manifest necessity for the aborting of the trial was not shown.

*Laganella* points, in justification of its conclusion, to the "public interest in seeing that there is a fair trial designed to end in a just and equitable judgment." *State v. Laganella,* 144 *N. J. Super.* at 290. This observation, indisputably true, however, begs the issue. The highest statement of where the public's interest lies in regard to retrials of defendants in criminal matters is found in the protection afforded them by the federal and state constitutional guarantees against twice being put in jeopardy for the same of-

fense. The honoring of such guarantees necessarily contemplates instances where a first trial may not have been a fair or equitable one and one in which the ultimate judgment does not fairly reflect the merits. The public's interest, as defined by these constitutional guarantees, is served by one trial of an accused's guilt on a charge—no more. Once a defendant has been placed in jeopardy and there follows a disposition on the merits, fair or unfair, right or wrong, double jeopardy precludes a retrial against a defendant's wishes. That is the essence of the rights, state and federal, being asserted here which fully reflect the public interest they were designed to serve; diluting them by fine distinctions dependent upon the subjective evaluation of a reviewing court as to the correctness of the ruling which resulted in the premature termination of a first trial, or a trial judge's alleged abuse of his discretion in mistrying a case, or the correctness of his conclusions, factual or legal, perhaps serves one interest of the public, but at utter sacrifice of the predominant one, that embedded in our organic law as a protection against twice being placed in jeopardy for the same offense.

Since we conclude that the present appeal, if successful, would require defendant's retrial of a charge of which he was previously acquitted, it cannot be maintained. There exists, therefore, no necessity for considering the merits of the challenged trial court ruling.

The appeal is dismissed.

LYNCH, P. J. A. D. (dissenting). As Chief Justice Burger said in his dissent in *United States v. Martin Linen Supply Co.*, 430 *U. S.* 564, 581, 97 *S. Ct.* 1349, 1360, 51 *L. Ed.* 2d 642, 657 (1977),[1] and as a review of the more

---

[1] And also Justice Rehnquist's concurring opinion in *Lee v. United States*, 432 *U. S.* 23, 36, 97 *S. Ct.* 2141, 2149, 53 *L. Ed.* 2d 80, 91 (1977), wherein he expresses his belief that the *Martin Linen Supply Co.* case "circumvented" the "bright line" analysis established two terms before in *United States v. Jenkins*, 420 *U. S.* 358, 95

recent cases reveals, with the narrow divisions among the Justices, there is "uncertainty" in the law concerning the double jeopardy protections of the Fifth Amendment, particularly with respect to the Government's right of appeal. But there *is* certainty as to some fundamental principles: (1) each case must be judged on its own circumstances to avoid application of an abstract formula, *Wade v. Hunter,* 336 *U. S.* 684, 691, 69 *S. Ct.* 834, 93 *L. Ed.* 974 (1949) ; *United States v. Perez,* 22 *U. S.* (9 Wheat.) 579, 6 *L. Ed.* 165 (1824) ; *State v. Rechtschaffer,* 70 *N. J.* 395, 405–406 (1976) ; *State v. Farmer,* 48 *N. J.* 145, 174 (1966), *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967) ; *State v. Laganella,* 144 *N. J. Super.* 268, 287 (App. Div.), app. dism. 74 *N. J.* 256 (1976) ; (2) the policies of the protection are far more important than a particluar label put upon its action by a court, *Lee v. United States,* 432 *U. S.* 23, 30, 97 *S. Ct.* 2141, 2146, 53 *L. Ed.* 2d 80, 87 (1977) ; *United States v. Marlin Linen Supply Co., supra,* 430 *U. S.* at 571, 97 *S. Ct.* at 1354, 51 *L. Ed.* 2d at 651; *State v. Currie,* 41 *N. J.* 531, 539 (1964) ; (3) the interests involved are not those alone of a defendant but also involve society's interest in fair trials designed to end in just judgments, *Illinois v. Somerville,* 410 *U. S.* 458, 469, 93 *S. Ct.* 1066, 35 *L. Ed.* 2d 425 (1973) ; *Wade v. Hunter, supra,* 336 *U. S.* at 689, 69 *S. Ct.* 834; *State v. Rechtschaffer, supra,* 70 *N. J.* at 406; (4) where there is an imperious necessity to do so defendant's interest must be subordinated to the public's interest. *Downum v. United States,* 372 *U. S.* 734, 736, 83 *S. Ct.* 1033, 10 *L. Ed.* 2d 100 (1963) ; *Wade v. Hunter, supra,* 336 *U. S.* at 689, 69 *S. Ct.* 834; (5) defendants have never been held to have an absolute right to be placed in jeopardy only once on any given criminal charge, see *United States v. Jorn,* 400 *U. S.* 470, 483–484, 91 *S. Ct.* 547, 27 *S. Ct.* 1006, 43 *L. Ed.* 2d 250 (1975), and *United States v. Wilson,* 420 *U. S.* 332, 95 *S. Ct.* 1013, 43 *L. Ed.* 2d 232 (1975). See, also, the several cases pending in the United States Supreme Court in the current term where the problem will be reexamined. 22 *Criminal Law Reporter,* No. 8, November 23, 1977.

*L. Ed.* 2d 543 (1971), and the Double Jeopardy Clause does not operate mechanistically to mean that once an accused has been put on trial regularly the proceeding must run its ordinary course to judgment or acquittal, *State v. Farmer, supra,* 48 *N. J.* at 174, and (6) the fact that defendant was placed in jeopardy at a first trial "begins, rather than ends, the inquiry." *Illinois v. Somerville, supra,* 410 *U. S.* at 467, 93 *S. Ct.* 1066[2].

On the issue of double jeopardy, it is principally because I conceive that the majority has prescinded from those considerations and because of its misconception of the nature of the trial court's action here, *i. e.,* whether or not it was really an "acquittal" of defendant, that I respectfully dissent. I also disagree with the majority on the application of *R.* 2:3–1 (appeals by the State). On that issue I thoroughly agree with Judge Fritz' analysis of that rule in *State v. Laganella, supra,* 144 *N. J. Super.* at 283–284. The Supreme Court has held that 18 *U. S. C. A.* § 3731, which permits the Government to appeal in criminal cases, is meant to pose no greater barrier to such appeals than is posed by the Constitution itself. *United States v. Martin Linen Supply Co., supra,* 430 *U. S.* at 568, 97 *S. Ct.* at 1352, 51 *L. Ed.* 2d at 649. Similar considerations apply in the construction of *R.* 2:3–1, our counterpart to the federal statute. See *Laganella, supra,* 144 *N. J. Super.* at 284. I do not disagree with the majority's holding that proof of "knowledge" on defendant's part is a necessary element of the offense with which he was here charged under *N. J. S. A.* 2A:85–2.

### A

#### *The "circumstances" of this case.*

The "circumstances" peculiar to this case are found in the record below. The majority and I view that record dif-

---

[2]On this and other principles herein there are a myriad of other citations which are appropriate, but no purpose would be served by adding them to those cited here.

ferently. That difference presents a fundamental reason why I depart from my colleagues. The majority opinion assumes that the only cognizable opening by the State consisted of what the prosecutor asserted before the luncheon recess— *i. e.,* that he was unable to prove that defendant had actual knowledge of the commission of the crime by Speight. The majority dismisses out of hand the fact that, after the luncheon recess—but before any evidence was offered and before the judge ruled on defendant's motion to dismiss—the prosecutor advised the judge that, at lunch, he had learned that defendant had knowledge of the commission of the crime by Speight and that the State was prepared to offer testimony to that effect. As the judge said:

After lunch Mr. Graves [the assistant prosecutor] represents to us, and *I am sure truthfully,* that he has been advised that there is available testimony that the defendant Lynch was aware of the commission of the crime because he was present at it. [Emphasis supplied]

Defense counsel objected on the ground that he had not been afforded notice or discovery of the State's intention to prove knowledge.

The judge observed:

It would be the utmost technicality to dismiss merely because the State did not allege it [knowledge] in its opening. I would, as I indicated before, permit the State to reopen all other things being satisfied.

However, the judge further noted that the State, not being prepared to prove knowledge until after the luncheon recess, "naturally did not provide any discovery to the defendant of that fact. It would be unfair in the extreme to put the defendant to a trial *today* on the issue of his knowledge of the actual commission of the crime." (Emphasis supplied). In addition, the judge stated: "I would not permit the State because of the lateness of the notice of this information to proceed with proof" that defendant had actual knowledge

of the crime. The judge's decision to dismiss the indictment after this ruling was rendered because, as he said, "I see no point in going through the charade."

It is at once apparent that the trial judge undertook no considered evaluation of the facts. Thus, I view the dismissal of the indictment as nothing more than a ruling that the State could not proceed to prove its case because it failed to provide discovery under *R.* 3:13–3. I consider the action of the trial judge to be a discretionary one, analogous to the grant or denial of a mistrial.

*R.* 3:13–3 reads, in pertinent part:

(f) *Continuing Duty to Disclose: Failure to Comply.* If * * * during trial a party discovers additional material or witnesses previously requested or ordered subject to discovery or inspection, he shall promptly notify the other party or his attorney of the existence thereof. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.

Pursuant to that rule, when the State, at the beginning of the trial and before any evidence was presented, advised the judge that it then had available witnesses to prove defendant's knowledge of Speight's commission of the crime, the judge was not limited to proceeding with the trial, as he said, "today." He had the discretion to (1) prohibit the use of the newly available testimony; (2) order the State to advise the defense of the names of the new witnesses; (3) grant a continuance, or (4) declare a mistrial in order to give defendant an opportunity to examine the new evidence and adjourn the trial until defendant had sufficient time.

In my view, the situation confronting the trial judge was not unlike that on the record in *United States v. Dinitz,* 424 *U. S.* 600, 96 *S. Ct.* 1075, 47 *L. Ed.* 2d 267 (1976), where the trial judge excluded one of defendant's counsel

from the trial as a result of the attorney's conduct in delivering his opening statement. There the judge had three choices: (1) to stay the trial to allow an application to review the ouster of counsel, (2) continuation of the trial with existing counsel, or (3) a mistrial. See *State v. Rechtschaffer, supra,* 70 *N. J.* at 409. Here the trial judge had the discretion to adopt any of the choices offered by *R.* 3: 13–3. In *Dinitz* the trial judge granted defendant's motion for mistrial and defendant then moved to dismiss the indictment on the ground that a retrial would follow, thereby implicating the Double Jeopardy Clause. The motion was denied. The Court of Appeals reversed. Upon *certiorari* the Supreme Court reinstated the District Court order denying dismissal. Mr. Justice Stewart, writing for the majority, distinguished between mistrials granted by the judge on his own motion and those granted at defendant's request. In the latter instance he said that when a defendant moves for the mistrial because of some judicial or prosecutorial error, it is his choice either to run the risk of conviction followed by appeal and reversal, or to obtain the mistrial and later undergo a new trial. He pointed out that if misconduct by the prosecutor or bad faith conduct by the judge brings on the motion for a mistrial, a retrial is barred. Since there was no such improper conduct by the prosecutor or the judge, the Supreme Court held that a retrial, ordered by the judge in exercise of his discretion, did not violate the Double Jeopardy Clause.

Here, too, when the trial judge was confronted with the choices set forth in *R.* 3:13–3, a discretionary ruling was called for. He exercised that function by refusing to permit the use of the testimony—this although, as he found, the prosecutor had truthfully advised that the evidence had only been uncovered during the luncheon recess. Thus, as in *Dinitz,* there was no misconduct which would have prevented a retrial, for the judge found that the prosecutor had acted in entire good faith.

In his opinion for the court in *State v. Rechtschaffer, supra,* Justice Schreiber reduced the inquiry on a mistrial issue to the practicalities involved:

The common threads that run through the Supreme Court cases are centered about the propriety of the trial court's granting sua sponte the mistrial and its cause. Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper judicial administration? Will the defendant be prejudiced by a second trial, and if so, to what extent? *See State v. Hudson,* 139 *N. J. Super.* 360 (App. Div. 1976). [70 *N. J.* at 410–411]

Here, patently, the trial judge had a "viable alternative" to dismissing the indictment. He could have permitted the amendment of the opening, continued the trial or, if necessary, he could have adjourned it and ordered a new trial at a later date. I therefore consider the dismissal of the indictment to be an abuse of discretion. It was a dismissal only on a procedural ground, not on the merits, and double jeopardy considerations do not bar the State's appeal. *State v. Laganella, supra,* 144 *N. J. Super.* at 286–288.

The court in *Laganella,* in an opinion thoroughly discussing the relevant policy considerations, held that dismissal of an indictment on the ground of failure of the State to comply with discovery under *R.* 3:13–3(f) was a mistaken exercise of discretion and double jeopardy considerations did not bar appeal by the State. Compare *State v. Farmer, supra,* where it was held that declaration of a mistrial in order to afford defendant full discovery was not an abuse of discretion and retrial did not violate the Due Process Clause.

The majority distinguishes *Laganella* by noting:

The trial judge in *Laganella* never intended to pass on the essential merits of the State's case; rather the dismissal was based upon its perception of the impropriety of the State's trial strategy. Here, of course, no impropriety on the part of the State played any role

in the dismissal; rather the dismissal was based simply upon the court's view that the announced State's proofs were insufficient as a matter of law.

I submit that the dismissal here was not on the merits any more than was the dismissal in *Laganella*. The decision of the trial judge here, stripped of its label of "acquittal" (see below), was not based on the ground that "the State's proofs were insufficient as a matter of law." Rather, the proofs of the State, as proffered by the prosecutor after the luncheon recess, were precluded by the judge's action, rather than considered insufficient.

The leading case of *United States v. Perez, supra,* holds that a court has the authority to discharge a jury from giving any verdict "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated," and a second trial is not barred by double jeopardy considerations. 22 *U. S.* (9 Wheat.) at 580. In my view, the circumstances of this case make it evident that a "manifest necessity" for mistrial existed and the ends of "public justice" — *i. e.,* the State's right to obtain a just judgment and to bring criminal defendants to trial — were frustrated by the precipitous dismissal of the indictment.

## B

*Was the judgment below a true "acquittal"?*

The majority asserts that the dismissal of the indictment is "the exact equivalent of an acquittal" and the "decision was one on the merits." Though the trial judge's decision on defendant's motion was merely a dismissal of the indictment, the judgment entered does call it an "acquittal." But in this area we are not concerned with the label or the form of the court's action. *Lee v. United States, supra,* 432 *U. S.* 23, 30, 97 *S. Ct.* 2141, 2146, 53 *L. Ed.* 80, 87; *United States v. Martin Linen Supply Co., supra,* 430 *U. S.* 564, 571, 97

*S. Ct.* 1349, 1354, 51 *L. Ed.* 2d 642, 651, or with "technisms," *State v. Currie, supra,* 41 *N. J.* 531, 539. In my view, the dismissal was neither an acquittal nor a judgment on the merits, for it was not a resolution of the factual elements of the offense charged. The majority cites *Martin Linen Supply Co.* for the principle that "a judgment of acquittal being a disposition on the merits after a jury had been discharged for failure to agree, barred defendant's retrial." True. But the majority fails to state that Justice Brennan's opinion in *Martin Linen* clearly demonstrates what an acquittal is — a *resolution* of some or all of the *factual elements* of the offense charged. He said:

* * * we must determine whether the ruling of the judge, whatever its label, actually represents *a resolution,* correct or not, of some or all *of the factual elements* of the offense charged.

There can be no question that the judgments of acquittal entered here by the District Court were "acquittals" in substance as well as form. The District Court plainly granted the Rule 29(c) motion on the view that the Government *had not proved facts* constituting criminal contempt. * * * In entering the judgments of acquittal, the Court also recorded its view that "the Government has failed to prove the material allegations beyond a reasonable doubt" and that "defendant should be found 'not guilty.' "

Thus, it is plain that the District Court in this case evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction. [430 *U. S.* at 571, 97 *S. Ct.* at 1354, 51 *L. Ed.* 2d at 651; emphasis supplied.]

And, in his concurring opinion, Justice Stevens noted with reference to the Senate Report on the Criminal Appeals Act of 1970:

* * * the Committee believed that the Constitution barred any appeal from an acquittal or from a dismissal amounting to an acquittal; "[a] *true acquittal is based upon the insufficiency of the evidence to prove an element of the offense.*" Id., at 11.

The same understanding was demonstrated by the bill's sponsor when he presented the Senate Report on the floor. He summarized the bill as providing that "the Government has the right to appeal any ruling by a district court in a criminal case which dismisses a prosecution in favor of a defendant except where the ruling is an

acquittal"; he also presented a letter from the Solicitor General explaining that the bill would allow "an appeal from any dismissal except one amounting to a 'judgment of acquittal,' *i. e., a factual judgment that the defendant is not guilty of the crime charged and is thereby entitled to protection against double jeopardy.*" 116 *Cong.* Rec. 35659 (1970). (Remarks of Sen. Hruska). [*Id.*, 430 *U. S.* at 579, 97 *S. Ct.* at 1358, 51 *L. Ed.* 2d at 655–656; emphasis supplied]

In *United States v. Sisson*, 399 *U. S.* 267, 90 *S. Ct.* 2117, 26 *L. Ed.* 2d 608 (1970), the issue was whether the action of the trial court was an "arrest or judgment" or an acquittal. Mr. Justice Harlan, expressing the view of five members of the court, held that the District Court's decision, depending as it did on facts not in the indictment but developed at the trial, was an acquittal. 399 *U. S.* at 288, 90 *S. Ct.* 2117. In Section II(c) of that opinion he said:

The same reason underlying our conclusion that this was not a decision arresting judgment — i.e., that the disposition is bottomed on *factual conclusions* not found in the indictment *but instead made on the basis of evidence adduced at the trial* — convinces us that the decision was *in fact an acquittal* rendered by the trial court after the jury's verdict of guilty. [399 *U. S.* at 288, 90 *S. Ct.* at 2129; emphasis supplied]

And, in *United States v. Wilson*, 420 *U. S.* 332, 95 *S. Ct.* 1013, 43 *L. Ed.* 2d 232 (1975), Mr. Justice Marhall, while stating that the court had no occasion to determine whether the ruling in Wilson's favor was actually an acquittal (420 *U. S.* at 336, 95 *S. Ct.* 1013), notes that in the course of the debates over the Bill of Rights there was no suggestion that the Double Jeopardy Clause imposed any general ban on appeals by the prosecution. He notes, further, that

The only restriction on appeal rights mentioned in any of the proposed versions of the Clause was in Maryland's suggestion that 'there shall be * * * no appeal from *matter of fact*,' which was apparently intended to apply equally to the prosecution and defense. [420 *U. S.* at 342, 95 *S. Ct.* at 1021; emphasis supplied]

And, in interpreting the opinion of Justice Harlan in *United States v. Sisson, supra,* Justice Marshall reiterates:

In Part II–c of the opinion, for which Mr. Justice Black provided a majority of the Court, Mr. Justice Harlan explained the third reason for concluding that the District Court's order was not an arrest of judgment: because the order was "bottomed on *factual conclusions* not found in the indictment but instead made *on the basis of evidence* adduced at the trial," it was an acquittal "rendered by the trial court after the jury's verdict of guilty." 399 *U. S.* at 288, 90 *S. Ct.* at 2129, 26 *L. Ed.* 2d 608. [420 *U. S.* at 349, 95 *S. Ct.* 1013, 1025 emphasis supplied]

Finally, in *Lee v. United States, supra,* Mr. Justice Powell for the majority, emphasized:

We recently made it clear that a trial court's ruling in favor of the defendant is an acquittal *only* if it "actually represents a *resolution,* correct or not, of some or all *of the factual elements* of the offense charged." *United States v. Martin Linen Supply Co.,* 430 *U. S.* 564, 571, 97 *S. Ct.* 1349, 51 *L. Ed.* 2d 642 (1977). [432 *U. S.* at 30, 97 *S. Ct.* at 2146, 53 *L. Ed.* 2d at 87, n. 8 emphasis supplied]

Here there never was a resolution of any of the factual elements of the case by the trier of fact. That was prevented by defendant's motion to dismiss the indictment. In my judgment, the order below, whatever its label, was not an acquittal.

C

*The Wilson — Jenkins — Serfass trilogy and Lee v. United States.*

As I read the majority opinion its theme seems to be that, after "jeopardy attaches" if there is a dismissal of the charge, a subsequent appeal by the State is barred if its success would result in a retrial of defendant. In support of that position the cases of *United States v. Wilson, supra; United States v. Jenkins, supra,* and *Serfass v. United States,* 420 *U. S.* 377, 95 *S. Ct.* 1055, 43 *L. Ed.* 2d 265 (1975), are cited.

It is true that the language in *Wilson* and *Jenkins* does state that where a successful government appeal from a dis-

missal of a criminal charge would *not* result in a retrial, double jeopardy policies are not offended. The reasoning is that, in the event of such successful appeal, there would be simply a reinstatement of the guilty verdict originally found against defendant and thus no second trial. But neither *Wilson* nor *Jenkins* reaches the question presented here because (a) they do not involve what I consider a discretionary action of the trial judge in dismissing an indictment; (b) in both cases the dismissal occurred after presentation of all the evidence, and (c) they do not reach the question whether, in such a context, where the successful appeal by the government may result in retrial—as in mistrial or analogous cases— double jeopardy policies would be offended. In this case there has been no trial, no evidence has been introduced against defendant and there has been no resolution of any of the factual issues involved.

In *Jenkins,* where the Supreme Court held that the government's appeal was barred by double jeopardy considerations, the court noted that the District Court had grounded its posttrial dismissal on findings of fact based on the evidence which resolved against defendant many (but not all) of the factual elements of the crime involved. 420 *U. S.* at 367, 95 *S. Ct.* 1006. It was in this context that the court held that defendant could not be put to trial for the second time to defend against those same facts. Defendant in the present case has not been subjected to any trial where evidence has been introduced against him or where any of the essential elements of the crime have been resolved either for or against him by the trier of the facts.

In *Serfass* the Supreme Court held that the government's appeal from a pretrial dismissal of the indictment against him was not barred. There the allowance of the appeal was permitted simply because, since the dismissal was in a pretrial order, and since defendant had not yet "been put to trial before the trier of the facts," jeopardy had not attached. As Chief Justice Burger put it, "[A]n accused must suffer jeopardy before he can suffer double jeopardy." 420 *U. S.*

at 393, 95 *S. Ct.* at 1065. I fail to see the relevance of the *Serfass* holding to this case.

With reference to the *Wilson-Jenkins-Serfass* trilogy, the majority opinion states: "Nothing in any of these cases suggests that a trial error favoring a defendant could be corrected on the State's appeal if the successful result of the appeal would be defendant's retrial." That is true, but neither do any of those cases suggest that where a trial judge takes discretionary action and invokes the signposts of "manifest necessity" and "public justice"—as I conceive the situation to be here—the government's appeal would be barred. To apply such a rigid rule that would bar any appeal by the State which may result in a retrial would be an "unconscionable result." *State v. Rechtschaffer, supra,* 70 *N. J.* at 405. Similarly, in *Wade v. Hunter,* it was said:

The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. [336 *U. S.* at 688–689, 69 *S. Ct.* at 837]

See also, *United States v. Jorn, supra,* 400 *U. S.* at 484, 91 *S. Ct.* 547, and *State v. Farmer, supra,* 48 *N. J.* at 174.

Further, I conceive that the majority attaches an inordinate conclusive significance to the time that "jeopardy attaches," as though, that event having happened, the double jeopardy problem is solved and there can be no retrial after dismissal. But as said in *Serfass v. United States, supra*:

It is true that we have disparaged "rigid, mechanical" rules in the interpretation of the Double Jeopardy Clause. Illinois v. Somerville, 410 U. S. 458, 467, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). However, we also observed in that case that "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." Ibid. Cf. United States v. Sisson, 399 U. S. at 303, 90 S. Ct. 2117, 26 L. Ed. 2d

608. Implicit in the latter statement is the premise that the "constitutional polices underpinning the Fifth Amendment's guarantee" are not implicated before that point in the proceedings at which "jeopardy attaches." United States v. Jorn, 400 U. S. at 480, 91 S. Ct. 547, 27 L. Ed. 2d 543. As we have noted above, the Court has consistently adhered to the view that jeopardy does not attach until a defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." Id., at 479, 27 L. Ed. 2d 543.

This is by no means a mere technicality, nor is it a "rigid, mechanical" rule. It is, of course, like most legal rules, an attempt to impart content to an abstraction. [420 U. S. at 390–391, 95 S. Ct. at 1064]

Defendant here has never been "put to trial before the trier of the facts," for, as said above, there has been no resolution of any of the fact issues involved.

Further, I read *Lee v. United States, supra,* 432 *U. S.* 23, 97 *S. Ct.* 2141, 53 *L. Ed.* 2d 80, as refuting the contention of the majority that, once jeopardy attaches with a dismissal following, a retrial is barred. *Lee* was a bench trial. Therefore jeopardy attached when the court began to hear evidence. *Serfass v. United States, supra,* 420 *U. S.* at 488, 95 *S. Ct.* 1055. After the prosecutor's opening statement defense counsel moved to dismiss the information. The trial judge reserved decision and the government presented its case consisting of the testimony of two witnesses. The judge then recessed for 15 minutes. After the recess, defense counsel moved for a judgment of acquittal on the ground that the prosecution had failed to establish an essential element of the offense. Thereupon the judge granted defendant's initial motion to dismiss because of the failure of the information to charge knowledge or intent. Lee was later indicted for the same offense. On substantially the same evidence as was presented on the first trial he was convicted. On appeal the Court of Appeals for the Seventh Circuit affirmed, rejecting Lee's claim that the second trial was barred by the Double Jeopardy Clause. 539 *F.* 2d 612 (1976).

On *certiorari* the Supreme Court affirmed. One of the principal arguments by Lee was that once the court had

determined to hear evidence in the first trial, he was entitled to have it proceed to a formal finding of guilt or innocence. Therefore he argued that the conviction on the second trial violated the Double Jeopardy Clause. Justice Powell, writing for the majority, cited *United States v. Dinitz, supra,* for the proposition that where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution. 432 *U. S.* at 32, 97 *S. Ct.* at 2147, 53 *L. Ed.* 2d at 89. The court emphasized that both in *Dinitz* and in *Lee* the proceedings were terminated at defendant's request. The court reiterated the *Dinitz* principle that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecutorial error that prompted defendant's motion was "intended to provoke" the motion or was otherwise "motivated" by bad faith or undertaken to "harass" or "prejudice" defendant. *Id.,* 432 *U. S.* at 32, 97 *S. Ct.* at 2147, 53 *L. Ed.* 2d at 89. Since the errors in the first *Lee* trial were not the product of the kind of overreaching outlined in *Dinitz,* but were, at most, mere negligence, the court held that *Lee's* second trial did not violate the Double Jeopardy Clause.

This case is strikingly similar to *Lee.* In both cases: (1) jeopardy had attached when the dismissal was entered; (2) the trial was peremptorily terminated at defendant's request by reason of his motion. I view *Lee* as refuting the majority's contention that a dismissal after jeopardy has attached bars a retrial.

## D

### Balancing society's interests against those of defendant in the circumstances of this case.

Further citation is not needed to restate the policy considerations in applying the Double Jeopardy Clause. Suffice to say that the competing interests of society and the defendant are to be weighed in striking a balance not offensive

to the Clause. *State v. Rechtschaffer, supra,* 70 *N. J.* at 405. Defendant's "valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter, supra,* 336 *U. S.* at 689, 69 *S. Ct.* at 837. As we have said above, balanced against the interests of defendant is the right of the State to bring criminals to trial in the interests of public justice. *Illinois v. Somerville, supra.*

Thus we ask: in reality, what harassment would reversal of the dismissal of the indictment here impose upon defendant? "Harassment is not a synonym for inconvenience. All repeated prosecutions distress defendants. Harassment, at least in double jeopardy law, involves misconduct by the prosecutor as well as hardship to the defendant." Comment, "Twice in Jeopardy," 75 *Yale Law J.* 262, 286 (1975). It has been noted that reprosecution burdens and disadvantages defendant more after he has had a full trial than if it ends prematurely. Comment, "Twice in Jeopardy," *supra* at 288. The brevity of the first trial is a factor in determining whether a retrial should be barred. *Gori v. United States,* 367 *U. S.* 364, 81 *S. Ct.* 1523, 6 *L. Ed.* 2d 901 (1961); *State v. Farmer, supra,* 48 *N. J.* at 184. In the Circuit Court opinion in *Gori* the brevity of the trial was noted and the court said that "for the defendant to receive absolution for his crime, later proven quite completely, because the judge acted too hastily in his interest, would be an injustice to the public in the particular case and a dangerous precedent for the future." *United States v. Gori,* 282 *F.* 2d 43, 48 (2 Cir. 1960). Except for the fact that defendant's guilt in the present case has not yet been proven, the statement is relevant here. The State should not be deprived of the opportunity to prove it by barring retrial.

I would submit that Justice Clark's dissent in the 5–4 decision of *Downum v. United States, supra,* suggests the proper principle to be applied in measuring the incon-

venience to which defendant would be put in the event of retrial:

As I see the problem, the issue is whether the action of the prosecutor in failing to check on the presence of his witness before allowing a jury to be sworn was of such moment that it constituted a deprival of the petitioner's rights and entitled him to a verdict of acquittal without any trial on the merits. Obviously under the facts here he suffered no such deprivation. Ever since Perez this Court has recognized that the "ends of public justice" must be considered in determining such a question. 9 Wheat., at 580. In this light I cannot see how this Court finds that the trial judge abused his discretion in affording the Government a two-day period in which to bring forward its key witness who, to its surprise, was found to be temporarily absent. I believe that the "ends of public justice," to which Mr. Justice Story referred in Perez, require that the Government have a fair opportunity to present the people's case and obtain adjudication on the merits, rather than that the criminal be turned free because of the harmless oversight of the prosecutor. [372 *U. S.* at 743, 83 *S. Ct.* at 1038]

Here the opening by the State had taken only a relatively short time. The degree of defendant's "harassment" by a second trial would be minimal considering the relatively slight exposure he had at the first trial. In this case I consider that his right to have the trial completed was subordinate to the public's interest in fair trials designed to end in a just judgment. Since the questions of "manifest necessity" and "public justice" depend on the circumstances of each case, I feel that the circumstances here demonstrate that both factors required the trial judge to deny defendant's motion to dismiss and to either permit amendment of the the State's opening, declare a mistrial, or grant a continuance or adjournment.

For the foregoing reasons I would reverse the dismissal and order a new trial to be scheduled after the State has fully complied with the discovery rule. *R.* 3:13–3.