STATE OF NEW JERSEY (CITY OF NEWARK), PLAINTIFF–APPELLANT, v. BUCK BARNES, DEFENDANT–RESPONDENT.

STATE OF NEW JERSEY (CITY OF NEWARK), PLAINTIFF–APPELLANT, v. RONALD UNDERWOOD, EMANUEL WRIGHT, JAMES WRIGHT AND EARL WRIGHT, DEFENDANTS–RESPONDENTS.

Argued January 22, 1980—Decided September 22, 1980.

*Thomas W. Matthews*, Assistant Corporation Counsel, argued the cause for appellant (*Salvatore Perillo*, Corporation Counsel, attorney; *Thomas W. Matthews* and *Michael R. Paglione*, legal intern, on the brief).

*Jeffrey E. Fogel* argued the cause for respondents (*Rutgers University–Newark, Urban Legal Clinic*, attorneys).

*Edwin H. Stern*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*John J.

*Degnan,* Attorney General of New Jersey, attorney; *Edwin H. Stern,* of counsel and on the brief; *William T. Koch, Jr.,* legal assistant, on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

The question presented is whether the State may appeal from a county court [1] determination at a criminal trial *de novo, R.* 3:23–8, that a municipal ordinance is unconstitutional.

The defendants, Buck Barnes, Ronald Underwood, Emanuel Wright, James Wright and Earl Wright, were charged with a total of 116 violations of a Newark municipal ordinance regulating peddlers on the city streets.[2] Defendant Barnes was tried on one of the complaints against him in Newark Municipal Court and found guilty on June 28, 1977. Although the record is not clear, it is apparent that guilty pleas to the remaining 115 complaints were entered by Barnes and the other defendants.

---

[1] The county courts were abolished and their jurisdiction, functions, powers and duties transferred to the Superior Court by amendments to the New Jersey Constitution adopted at the general election of November 7, 1978, effective December 7, 1978. See Article 6, section 1; Article 11, section 6.

[2] The pertinent ordinance, Newark *R.O.* 8:7–6, provides:

No peddler shall have exclusive right to any one place on any sidewalk, street, or other public place, and no peddler shall operate or conduct his activities in a congested area where to do so might impede or inconvenience the public, and no peddler shall make repeated stops at the same point or in the immediate vicinity thereof where to do so might impede or inconvenience the public. For the purpose of this ordinance the judgment of a police officer exercised in good faith shall be deemed evidential as to whether an area is congested or the public might be inconvenienced.

The complaints against the defendants charged them with unlawful obstruction of the orderly flow of pedestrian traffic and impeding or inconveniencing the public in a congested area.

A variety of fines, suspended prison sentences and probation terms were imposed by the municipal court.[3]

All the defendants appealed to the then Essex County Court. Their appeals were consolidated for a trial *de novo* on the record pursuant to *R.* 3:23–8. It appears that the only issue raised in that court was the constitutionality of the ordinance. In an unpublished opinion issued January 4, 1978, the county court found the ordinance under which the defendants were convicted to be unconstitutionally vague and overbroad on its face. A judgment reversing the convictions and acquitting the defendants was entered on March 21, 1978.

The State appealed the constitutional question to the Appellate Division. On May 8, 1979 that court dismissed the appeal, leaving the county court judgment of acquittal in full force and effect. 168 *N.J.Super.* 311, 315 (1979). The dispositive question was the State's right to appeal, an issue raised *sua sponte* by the court during oral argument. The Appellate Division held that the appeal was precluded as not coming within the terms of *R.* 2:3–1. 168 *N.J.Super.* at 314. At the time of the appeal from the county court determination of unconstitutionality *R.* 2:3–1(b) provided that the State could appeal from "a judgment of the trial court entered before or after trial dismissing an indict-

---

| [3]Defendant | Number of Complaints | Total Fine | Suspended Jail Term [*] | Probation [**] |
|---|---|---|---|---|
| Buck Barnes | 23 | $6,600 | 45 days | 1 year |
| Ronald Underwood | 18 | $2,310 | 30 days | 1 year |
| Emanuel Wright | 34 | $8,100 | 30 days | 1 year |
| James Wright | 16 | $3,600 | 30 days | 1 year |
| Earl Wright | 25 | $3,375 | 20 days | 1 year |

[*] Per conviction to run concurrently.
[**] Per complaint to run concurrently.

ment, accusation or complaint * * *." [4] The Appellate Division found that the State could not appeal because the constitutionality of the ordinance had not been raised "before or after trial" but rather had been raised *during* the *de novo* hearing in the county court. 168 *N.J.Super.* at 314.

We granted the State's petition for certification to address the issue of whether the appeal is precluded by either our Rules or the double jeopardy clauses of the federal and state constitutions. 81 *N.J.* 349 (1979). We now reverse.

I

It is by now well established that a constitutional challenge to a criminal enactment is properly raised for the first time at a trial *de novo*. *State v. Celmer*, 157 *N.J.Super.* 242, 245–46 (App.Div.1978), rev'd on other grounds, 80 *N.J.* 405 (1979). See also *State v. Damiano*, 142 *N.J.Super.* 457 (Law Div.1978) (where constitutionality of statute is dispositive of appeal, waiver of trial *de novo* is appropriate). The better practice for a municipal court is "to assume that an act is constitutional until it has been passed upon by the Appellate Court, unless it is so clearly in contravention of the constitution that there can be no reasonable doubt about it * * *." *In re Woodland Ave. Drain, East Orange*, 39 *N.J.L.J.* 362, 363 (Essex Cir.Ct.1916); *see Legg v. Passaic County*, 122 *N.J.L.* 100 (Sup. Ct.), aff'd o. b., 123 *N.J.L.* 263 (E. & A.1939).

---

[4] In *State v. Lynch*, 79 *N.J.* 327 (1979), this Court interpreted *R.* 2:3–1 "to limit the State's right to appeal coextensively with new trial preclusions due to the federal and state constitutional Double Jeopardy Clauses." *Id.* at 334. See also *State v. Laganella*, 144 *N.J.Super.* 268, 283–84 (App.Div.), appeal dismissed, 74 *N.J.* 256 (1976).

Effective September 10, 1979, *R.* 2:3–1 was amended to allow an appeal by the State from a "judgment of the trial court dismissing an indictment, accusation or complaint, where not precluded by the constitution of the United States or of New Jersey."

Here the defendants correctly preserved their constitutional attack until the trial *de novo.* Had they followed the court rules in so doing, this drama of errors might very well never have been staged.[5] At a trial *de novo* a defense that the dispositive statute or ordinance is unconstitutional shall be raised by motion and determined in accordance with *R.* 3:10. See *R.* 3:23–8(d). *R.* 3:10–3 provides explicitly that the defense of unconstitutionality must be raised by motion before trial or within ten days of a verdict of guilty. The rule goes on to state that such defenses shall not be considered during trial.

Not only did the defendants fail to make the requisite motion before trial, but the county court proceeded to determine the constitutional issue at trial. To compound these errors, the State apparently failed to object at any point. Thus the present appeal begins to resemble the unanswered question posed by the United States Supreme Court in *Serfass v. United States,* 420 *U.S.* 377, 95 *S.Ct.* 1055, 43 *L.Ed.*2d 265 (1975), namely, what are the consequences for "a defendant who is afforded an opportunity to obtain a determination of a legal defense prior to trial and nevertheless knowingly allows himself to be placed in jeopardy before raising the defense"? *Id.* at 393, 95 *S.Ct.* at 1065, 32 *L.Ed.*2d at 277.

In view of the importance of the issue raised and our disinclination to permit any party to profit from inattention to the rules of court, we relax the requirements that the parties have failed to observe, *R.* 1:1–2, and now address the double jeopardy issue. *Cf. State v. Currie,* 41 *N.J.* 531 (1964) (defendant failed to raise double jeopardy claim before trial). *See also State v. Schwarcz,* 123 *N.J.Super.* 482 (Law Div.1972) (court will treat unconstitutionality defense as having been raised before trial).

However, the bench and bar can scarcely expect future disregard of the Rules to be treated with a similar indulgence.

---

[5]The attorneys for the defendants at the county court level are not the defense attorneys of record here.

## II

■ Defendants contend that the double jeopardy clause precludes the State's appeal of the county court's reversal based on the unconstitutionality of the ordinance. Although there are five defendants and 116 complaints, 115 of the complaints involved guilty pleas. Those pleas carry over to a trial *de novo* and in that proceeding there may be no relitigation of factual issues as to guilt. *State v. Mull*, 30 *N.J.* 231 (1959); *State v. Schrier*, 30 *N.J.* 241 (1959).

■ However, the entry of guilty pleas will not bar a defendant's challenge to the constitutionality of the ordinance. *Menna v. New York*, 423 *U.S.* 61, 96 *S.Ct.* 241, 46 *L.Ed.2d* 195 (1975); *see State v. Garoniak*, 164 *N.J.Super.* 344 (App.Div.1978), certif. den., 79 *N.J.* 481 (1979). As explained by the United States Supreme Court in *Menna* :

* * * a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict the petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar his claim. [423 *U.S.* at 62 *n.* 2, 96 *S.Ct.* at 242 *n.* 2, 46 *L.Ed.2d* at 198.]

■ As to those defendants who pleaded, a successful government appeal of the county court determination could not subject them to successive prosecution or multiple punishment but only in reinstatement of their guilty pleas. Hence, the double jeopardy clause does not present any impediment to the State's appeal in those cases.

## III

The double jeopardy claim of defendant Barnes arises in a different context, he having gone to trial and suffered convic-

tion in the municipal court. Resolution of that claim calls for more exacting analysis.

The double jeopardy clause of the Fifth Amendment of the United States Constitution provides " * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." This federal constitutional requirement is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 *U.S.* 784, 89 *S.Ct.* 2056, 23 *L.Ed.2d* 707 (1969). We have consistently applied double jeopardy principles which accord with the federal constitution because its language is broader than our own state constitution's double jeopardy clause, Article 1, paragraph 11.[6] *State v. Lynch*, 79 *N.J.* 327, 340 (1979); *State v. Rechtschaffer*, 70 *N.J.* 395, 404 (1976). *But see State v. Farmer*, 48 *N.J.* 145, 168 (1966), *cert.* den., 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.2d* 335 (1967) (despite language difference in state and federal constitution double jeopardy clauses, clauses are coextensive in application).

The double jeopardy clause serves three related purposes:
(i) It protects against a second prosecution of an offense after acquittal of the same offense.
(ii) It protects against a second prosecution of an offense after conviction of the same offense.
(iii) It protects against multiple punishments for the same offense.
[*North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.2d* 656, 664–65 (1969).]

This clause guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223, 2 *L.Ed.2d* 199 (1957), *quoted in United States v. Martin Linen Supply Co.*, 430 *U.S.* 564, 569, 97 *S.Ct.* 1349, 1353, 51 *L.Ed.2d* 642, 649 (1977); *cf. State v. Tropea*, 78 *N.J.* 309 (1978) (double jeopardy aside, considerations of funda-

---

[6]Paragraph 11 provides in part: "No person shall, after acquittal, be tried for the same offense."

mental fairness militated against retrial). "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." *United States v. Jorn*, 400 *U.S.* 470, 479, 91 *S.Ct.* 547, 554, 27 *L.Ed.2d* 543 (1971) (Harlan, J.), *quoted in United States v. Martin Linen Supply Co., supra.*

The fulfillment of these important policy considerations does not require that an accused go free every time his trial falls short of final judgment. *State v. Farmer, supra,* 48 *N.J.* at 169; *see, e. g., United States v. Scott,* 437 *U.S.* 82, 98 *S.Ct.* 2187, 57 *L.Ed.2d* 65 (1978). On the other hand the double jeopardy clause does not constitute a blanket prohibition of appeals by the State. *United States v. Wilson,* 420 *U.S.* 332, 344, 95 *S.Ct.* 1013, 1022, 43 *L.Ed.2d* 232, 241–42 (1975). Where the proceedings against an accused are terminated during trial on a basis unrelated to factual guilt or innocence, the State may appeal from a ruling of the trial court in favor of the defendant without offending the principles expressed in the double jeopardy clause. *United States v. Scott, supra,* 437 *U.S.* at 99, 98 *S.Ct.* at 2198, 57 *L.Ed.2d* at 79. In *United States v. Martin Linen Supply Co., supra,* the Court stressed that what constitutes an acquittal by a trial court is not controlled by the form of the judge's action. "Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." 430 *U.S.* at 571, 97 *S.Ct.* at 1355, 51 *L.Ed.2d* at 651.

The application of this principle is well–illustrated in *United States v. Scott, supra.* At the conclusion of the trial in *Scott* the court granted the defendant's motion to dismiss because of preindictment delay. The Supreme Court upheld the State's right to appeal the trial court dismissal, noting that neither a judge nor a jury had decided the defendant's guilt or innocence within the factual context of the trial.

 Similarly, the county court reversal of the convictions here on the basis of the unconstitutionality of the ordinance was unrelated to the guilt or innocence of the defendant Barnes. Indeed, scrutiny for facial invalidity and vagueness in a statute, as was performed here, necessarily eschews consideration of factual guilt or innocence. Accordingly, we hold that the State may appeal the constitutional issue raised in the county court without offending established principles of double jeopardy.

The result reached by the Court today and already codified in our court rules (see *n. 4, supra*, at 367 is in accord with the Supreme Court's most recent interpretations of double jeopardy protection. It is distinguished from our earlier holdings that once an acquittal resolves, correctly or not, the factual elements of the offense charged, double jeopardy prevents a new trial. *State v. Lynch, supra*, 79 *N.J.* at 343; *City of Newark v. Pulverman*, 12 *N.J.* 105, 114–15 (1953). The principles set forth in those cases were recently reaffirmed by the United States Supreme Court in *Sanabria v. United States*, 437 *U.S.* 54, 98 *S.Ct.* 2170, 57 *L.Ed.*2d 43 (1978), and are still good law. However, these determinations cannot be extended to cover situations such as the one addressed by the Court today, and decisions grounded in any such extensions, *e. g., State v. Fiore*, 69 *N.J.Super.* 122 (App.Div.), certif. den., 36 *N.J.* 142 (1961), can no longer be viewed as valid.

## IV

For the above reasons the Appellate Division judgment denying the State a right of appeal is reversed. The cause is remanded to the Appellate Division for consideration of the constitutionality of the ordinance.

*For reversal*–Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK–7.

*For affirmance*–None.