205 N.J. Super. 499 (1985)
501 A.2d 551
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JACK PORTOCK, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1985.
Decided November 20, 1985.
*500 Before Judges KING, O'BRIEN and SCALERA.
Donald S. Burak, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney; Donald S. Burak, Deputy Attorney General and *501 Charles M. Grinnell, Deputy Attorney General, of counsel and on the brief).
Steven C. Harris argued the cause for respondent Jack Portock (Harris & Fauntleroy, attorneys; Gregory Imperiale, on the brief).
Alfred R. Scerni argued the cause for respondent Martin Stone, Jr. (Wilson, Fusco & Scerni, attorneys; Vincent P. Riccardi, on the brief).
John J. Finnegan, III, argued the cause for respondent Anthony Grover (Finnegan & Barth, attorneys).
John J. Montefusco argued the cause for respondent Diane Shedlock (Montefusco & Kesselman, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
In this case the State appeals by leave granted from a dismissal of certain counts of this multi-count indictment following the prosecutor's opening statements. R. 2:3-1(b)(1). Since we cannot analytically distinguish this case in any way from State v. Lynch, 79 N.J. 327 (1979), we affirm the ruling of the Law Division judge because the Federal and State Double Jeopardy clauses bar any further prosecution. Id. at 340.
This is the procedural background. On May 17, 1984 a state grand jury returned an indictment charging Jack Portock, Peter Bellizzie, Ebb Grover, Anthony Grover, Frank Kenny, Martin Stone, Nancy Desposito, Diane Shedlock, Joseph Brew and Benny Langford with: (1) conspiracy, contrary to N.J.S.A. 2C:5-2 (Count One) and (2) unlawful interception of an oral communication of another, contrary to N.J.S.A. 2A:156A-3(a) and complicity, contrary to N.J.S.A. 2C:2-6 (Count Two). Additionally, Portock was charged with four counts of procurement of persons to unlawfully intercept oral communications, contrary to N.J.S.A. 2A:156A-3(a) (Counts Three through Six).
*502 On May 31, 1985 a judge other than the trial judge denied defendants' motions to dismiss the indictment due to insufficient evidence. A trial jury was sworn on August 5, 1985. That same day the prosecutor and defense counsel for Jack Portock and Anthony Grover gave opening statements before the jury. Counsel for Martin Stone moved to dismiss the indictment against him on the basis that the prosecutor's opening was insufficient. All other defense counsel joined in the motion. Prior to ruling, the trial judge requested the remaining defense counsel to present their opening statements before the jury.
On August 6, 1985 the judge granted defendants' Stone, Shedlock and Grover's motions to dismiss the indictment, granted defendant Portock's motion to dismiss the indictment as to Counts Four and Five, but denied the motion as to the remaining counts, and denied defendants' Kenny and Desposito's motions. He also denied the State's motion for a stay of the trial, but recessed until August 12, 1985.
The State moved for leave to take an interlocutory appeal. This motion was granted on August 9, 1985. In the order granting the State's motion, we stayed the trial proceedings and ordered that the jury not be officially discharged but the trial be adjourned without date. On August 12, 1985 the trial judge advised the jury that the trial would be adjourned without date.
Defendant Kenny moved for leave to appeal the denial of his motion to have the indictment dismissed. That motion was denied on August 9, 1985. Kenny then moved before the New Jersey Supreme Court for leave to appeal. Leave was denied on September 20, 1985. Jack Portock moved for leave to cross-appeal from the trial judge's denial of his motion to dismiss count three of the indictment; leave was denied on September 20, 1985.
This is the factual background from which the dismissals following the opening emanated. On August 5, 1985 when the *503 Deputy Attorney General made his opening statement to the jury, he told them that the defendants, members of the plainclothes security unit at the Bally Park Place Hotel/Casino in Atlantic City, had conspired to intercept the oral communications of an occupant of one of the guest rooms and had, in fact, done so. As noted, following the prosecutor's opening, counsel for defendants Portock and Grover opened before the jury. After their openings, counsel for defendant Stone moved to dismiss the indictment, alleging that the prosecutor's opening was deficient as it did not allege willfulness, purpose or intent on Stone's part, nor how he was involved in the conspiracy. All other defense counsel joined in the motion. Before ruling, the trial judge requested the remaining defense counsel to open to the jury.
On August 6, 1985 the trial judge determined that R. 1:7-1(a) simply requires the State in a criminal action to make an opening statement but that there were no requirements as to what the opening should state. Noting that there was no New Jersey criminal case on point, the judge cited a civil case for the proposition that a civil complaint may be dismissed where the opening establishes that no cause of action exists. See Manzi v. Zuckerman, 157 N.J. Super. 63, 66 (App.Div. 1978). The judge then determined that there was a requirement that a cause of action be set forth in the State's opening in a criminal case, and that the State's opening must show the judge that there would be proofs which, if believed, could result in a jury having something to consider in determining guilt.
After argument, the judge set forth some possible responses to a deficient opening. He decided against declaring a mistrial because of potential double jeopardy questions. He also decided against denying all the motions on the merits because he felt there were serious deficiencies in the State's opening statement. But he refused to allow the State to reopen to cure the alleged deficiencies. In addition, he considered the "complicated" nature of the offense charged, and the considerable expense of private counsel for the defendants. As noted, he then *504 dismissed the indictment with respect to defendants Stone, Grover and Shedlock, dismissed two counts against defendant Portock, denied a motion to dismiss count three against defendant Portock, and denied the motions to dismiss the indictment with respect to defendants Desposito and Kenny.

I
In hearing defendants' motion to dismiss the indictments because of deficiencies in the State's opening, the judge undertook the task of defining what the law demands of a prosecutor's opening remarks. After noting that R. 1:7-1(a) merely requires the prosecutor to open in a criminal action and concluding there was no case law on point, the judge decided that there were two requirements for an opening statement in a criminal case. First, the prosecutor must set forth a cause of action and, second, the opening "must be such that the court can see in the statements made that there will be proofs that, if believed, could result in a jury having something at least to consider as to whether he be guilty or not guilty."
The judge was correct that R. 1:7-1(a) is silent as to what constitutes a proper opening. However, there is authority on point. State v. Lynch, 79 N.J. 327 (1979), directly addresses the issue. In Lynch, our Supreme Court held that although the trial judge had abused his discretion in entering a judgment of acquittal on the basis of the State's opening remarks, the State's appeal was barred by double jeopardy principles. In his opening, the prosecutor there had failed to allege a factual component of the crime which the judge wrongly believed was required by statute. In response to the motion to dismiss after his opening, the prosecutor proffered the testimony of a witness whom defendant asserted had not been disclosed by discovery. Rather than allowing the State to reopen, or ordering a brief continuance to permit further discovery, or granting a mistrial, the judge limited the State's proofs to what had been set forth in the prosecutor's opening. He then in anticipation *505 of a motion to dismiss at the end of the State's case, concluded that the State's available proofs would be insufficient to establish the charges in the indictment and ruled that the defendant would be entitled to an acquittal at the close of the State's case. Rather than proceed with a "charade," the judge then dismissed the indictment and entered a judgment of acquittal. The State appealed. We ruled 2-1 that the State's appeal and any retrial were precluded by the doctrine of double jeopardy. State v. Lynch, 155 N.J. Super. 431 (App.Div. 1978). The dissenting judge reasoned that the trial court's judgment was not an acquittal because no evidence had been presented and that the Double Jeopardy clause did not bar the State's appeal. Id. at 445 (Lynch, P.J.A.D., dissenting). The Supreme Court affirmed. 79 N.J. 327 (1979).
Justice Schreiber writing for a unanimous Court noted that trial judges have been cautioned to be most reluctant in granting dismissals on openings of counsel. Id. at 336 citing Passaic Valley Sewerage Comm'rs v. Geo. M. Brewster & Son, Inc., 32 N.J. 595, 606-607 (1960). He stated that "[t]his precaution exists because an opening statement should set forth only a succinct statement of what a party proposes to prove. The jury, having been given an overview of the State's and defendant's positions, will understand the nature of the action and be able to follow the evidence more intelligently." Id. citing Farkas v. Middlesex County Board of Chosen Freeholders, 49 N.J. Super. 363, 367-368 (App.Div. 1958).
We agree that Lynch does not provide the "bright line" test for the sufficiency of an opening that the trial judge here was seeking. But we conclude that the prosecutor's opening should be part of orderly trial procedure provided for the benefit of the jury, not the defendant. The judge's standard is more in keeping with a notion of the opening as a device by which the State confronts the defendant with the charges he faces and informs him of the course the case against him will take. Annot. "Power of trial court to dismiss prosecution or direct acquittal on basis of prosecutor's opening statement" 75 A.L.R.3d *506 649 (1977), contains a good discussion on various conceptions of the opening and some corresponding tests for sufficiency.
The Annotation suggests that the courts allowing summary termination at the close of the prosecutor's opening do so only upon an affirmative showing that the prosecution is not entitled to a conviction. Id. at 665. United States v. Dietrich, 126 Fed. 676 (1904), cited as the leading case in this area, held that termination upon the opening would be proper where, after full opportunity was permitted for the correction of any ambiguity, error, or omission in the opening statement, a fact was clearly admitted which must necessarily prevent a conviction and require an acquittal. The defendant in Dietrich was charged with violating a statute making it unlawful for a "member of Congress" to accept a bribe. In his opening, the prosecutor acknowledged that the Senator had committed the act prior to being sworn to Congress. The judge dismissed the case after the prosecutor opened since the defendant was not a "member of Congress" at the time he allegedly committed the act. Although passing on the test used by the judge in the case before us for the sufficiency of the prosecutor's opening is not crucial to the resolution of the issues on this appeal, the Annotation (cited by the Supreme Court in Lynch) provides examples of alternative formulations the judge had available to him, some of which appear more in keeping with Lynch than the one the judge chose here. See 75 A.L.R.3d at 673-675 on "propriety of amending opening statement."
Implicit in the Supreme Court's opinion in Lynch is the acknowledgment that trial judges may, in their discretion, dismiss a case based on the prosecutor's opening. But the Court could not have been clearer in urging trial judges to resist deciding cases prematurely, counselling instead that they hear the attorney's proofs. 79 N.J. at 336. The Court warned that "[a]dherence to this policy in criminal trials is even more compelling in view of the double jeopardy factor." Id. at 337. Pressler, Current N.J. Court Rules, Comment R. 1:7-1(a) is even more explicit, "[t]he caution and reluctance by which the *507 trial judge should be guided in determining a motion to dismiss on the opening statement is even more demanding in a criminal case since such a dismissal [on the opening] is not appealable and will preclude retrial on double jeopardy grounds. On such a motion, the trial judge should therefore consider the alternatives of either declaring a mistrial or ordering a continuance."
The judge observed that this was "a complicated, legally landtrapped case." He was clearly concerned with potential prejudice to the defendants if the prosecutor was allowed to reopen. He feared that defendants might have had to change their openings in response to the prosecutor's remarks, a tactic they would be unable to explain to the jury. While acknowledging case law holding that counsel should be allowed to reopen, the judge stated that "[t]here are cases where that is inappropriate and this is one of them."
The Supreme Court's holding in Lynch that the trial judge mistakenly exercised his discretion in not allowing the defendant to reopen was rendered independently of the trial judge's erroneous view of the law. Id. at 337. In the case before us, the judge refused a reopening to the State because of potential prejudice to the defendants. He rejected the option of a mistrial, but this possibly may have been the more prudent course. See State v. Rechtschaffer, 70 N.J. 395, 406-411 (1976). We fail to see why a reopening was any more legally problematic on the facts before us than it would have been in Lynch. Counsel for Lynch had also opened before moving to dismiss. Allowing the prosecutor to reopen there would have subjected Lynch to the same potential prejudice these defendants would face in meeting the prosecutor's reopening. Nonetheless, the Supreme Court suggested that a reopening was in order. Nor do we see any increased risk because of the multiplicity of defendants. The better course would have been to permit the State to reopen and allow defendants to assert on the record any actual prejudice they may have suffered for consideration on future appeal. This action would allow defendants to preserve their grounds for appeal and afford a reviewing court an *508 opportunity to rule on the basis of the actual proofs presented at trial. Such a course would avoid the consequences of the bar of double jeopardy that follow upon a premature resolution of the proceedings. Needless to say, a motion to dismiss should always be made immediately after the State's opening, not after defendant's opening.

II
An inquiry into the character of the trial judge's ruling here is necessary to determine whether double jeopardy considerations are implicated in this appeal. The judge characterized his ruling as an order granting defendants' motion to dismiss the indictments. Yet, what constitutes an acquittal by a trial judge is not controlled by the form of the judge's action. State v. Barnes, 84 N.J. 362 (1980). In Barnes, our Supreme Court relied upon the test for acquittal established by the United States Supreme Court in United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), "we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Id. at 571, 97 S.Ct. at 1354, 51 L.Ed.2d at 651 quoted in State v. Barnes, 84 N.J. at 371.
The State contends that the trial judge ruled on interlocutory matters of law in dismissing the indictments. This argument is premised on the judge's test requiring that the State's opening both state a cause of action and be such that the court can see that there will be proofs sufficient to result in a jury having something to consider in determining guilt. The State maintains that the judge intended to create a standard by which, as a matter of law, a court could determine whether to dismiss an indictment on the basis of the prosecutor's opening remarks. Utilization of this standard, so the State contends, involves no factual determinations. The focus is on the prosecutor's opening remarks which are obviously not evidence.
*509 A trial judge cannot employ a standard designed to measure whether the State's proofs will be sufficient to go to the jury without considering the actual quality of the State's proofs. Consider how different a case is State v. Barnes, 84 N.J. 362 (1980). In Barnes, the Supreme Court allowed the State to appeal from a judgment of acquittal at a trial de novo in the County Court, Law Division,[1] because it was based on a determination that the municipal ordinance at issue was unconstitutional; the ruling was thus unrelated to the guilt or innocence of the defendant. The County Court's finding that the ordinance was facially invalid "eschew[ed] consideration of factual guilt or innocence." Id. at 372. Here the judge's test does not eschew such an inquiry but rather mandates it.
This impression finds confirmation in the record. Argument on the motion to dismiss consisted largely of requiring the prosecutor to go through his case against each of the defendants. Initially, the judge appeared to limit the prosecutor's remarks to the case that was made out in the opening. As argument on the motion continued, the focus shifted from what the prosecutor had alleged in his opening to what he in fact could prove at trial.
For example
THE COURT: Stone and Grover, what you have said to me is that you said Stone or Grover, because that is what the witness is going to say. Do you have a witness that's going to come in here and say Marty Stone did, he was there, he's the one, or do you have a witness that's going to say Tony Grover, he's the one, someone that's going to get away from the disjunctive?
MR. GRINNELL [the prosecutor]: Yes, sir. I have a witness that will get on the stand and testify that all  he personally instructed all of the subjects on their duty, the sergeants that were involved, and this would relate to Mr. Marty Stone, he was a sergeant at that time, and I laid that out in my opening, that he specifically instructed them on the equipment and he gave them orders which they, in turn, were to give to their subordinates, and one of the subordinates that I have as a witness will be able to testify that at least one of those sergeants carried through with 

*510 THE COURT: Which one? How about Martin Stone, do you have one that says Martin Stone carried through, or do you get back to this point where, when we get to the carried through, it was either Stone or Grover, I'm not sure.
MR. GRINNELL: John Rush put each of these defendants in the room. He will tell you that they were monitors on that equipment, that he personally observed them as monitors on the equipment, it was their responsibility to be monitors on the equipment, and what their job was is to take down everything that they heard on the tape recorder and write it down. Each of these witnesses will be placed in the room operating that equipment.
THE COURT: Operating equipment. In other words, you can get rid of the or?
MR. GRINNELL: Yes, Sir, I can.
The State contends that although the prosecutor proffered evidence, the judge ignored it and considered only the opening in determining whether to dismiss the indictments. The State assigns this fact great weight, in attempting to distinguish this case from Lynch. The State argues that Lynch turned on the "erroneous evidentiary ruling" which prohibited the State from presenting evidence the trial judge thought necessary for conviction. It was this erroneous ruling that led to Lynch's acquittal for insufficient evidence. Reasoning that since no limitation was placed on the evidence to be presented and relying on the prosecutor's rejected proffer, the State here urges that the judge ruled the opening and not the evidence insufficient. This argument to us amounts to a distinction without a difference. The limitation imposed in Lynch was important to its disposition but more because of the fact that it resulted in the conclusion that the allowable proofs would be insufficient to support a conviction rather than any independent significance it possessed. Whether the judge here decided that the facts alleged in the opening were not enough to go to the jury or considered the State's proffer to be legally insufficient is immaterial. His conclusion in either situation is the same  that the jury ultimately would not have had any factual basis for determining guilt or innocence. Right or wrong, he made that determination.
Although the trial judge considered Lynch inapposite, we think it directly on point and controlling. If anything, Lynch is *511 a closer case than the one on appeal. In his dissent in the Appellate Division, Judge Lynch presented a good argument for holding that the "acquittal" was nothing more than a grant of a mistrial on defendant's motion, for failure to provide discovery. 155 N.J. Super. at 449. Judge Lynch argued that the trial judge's ruling on the procedural ground prevented any factual determination. Id. at 455. No view of the judge's action in the case before us would allow such an interpretation. We think it worth noting here that the indictments had survived pretrial insufficiency motions. On those motions another judge said that it was "clear and plain that it would have been an error if the Grand Jury had failed to indict." We conclude that the trial judge's articulated test as well as the colloquy on the motion to dismiss reveal that he adjudicated the case on its merits. The dismissal was a judgment of acquittal.
We find this language from Lynch controlling.
The trial court did not select what undoubtedly would have been a wiser or more judicious avenue to resolve the problem with which it was confronted. It chose instead to consider the only proofs which it would permit the State to produce and to measure those proofs against its concept of the statutory requirement. This action was equivalent to the granting of a motion to dismiss at the end of the State's case. It saw no need to proceed formally through a trial. The jury having been impaneled and sworn, jeopardy had attached. The trial court's dismissal reflected an adjudication on the merits. The case was "over". The dismissal was a judgment of acquittal. The trial court's interpretation of the statute, though erroneous, led to prohibiting the admission of certain evidence  a ruling which may be "characterized as an erroneous evidentiary ruling," which in turn caused the acquittal for insufficient evidence. "That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the [case] * * *." Sanabria v. United States, supra, 437 U.S. [54] at 68-69, 98 S.Ct. [2170] at 2181, 57 L.Ed.2d [43] at 56-57 [(1978)]. [State v. Lynch, 79 N.J. at 343.]

III
Thus the ultimate issue before us is whether the State's appeal is barred by double jeopardy under Art. I, par. 11 of the State constitution and the federal Fifth Amendment's Double Jeopardy Clause. This is so because if we agree that the ruling operated to acquit the defendants, the law in New Jersey is well *512 settled that double jeopardy considerations will bar the State's appeal. "Once the acquittal resolves, correctly or not, the factual elements of the offense charged, double jeopardy prevents a new trial." State v. Lynch, 79 N.J. 327, 343 (1979). Cf. State v. Laganella, 144 N.J. Super. 268, 289 (App.Div. 1976).
The State argues that none of the principles underlying double jeopardy are offended in this case. Specifically, the State contends that correcting the trial court would not subject the defendants to a second trial. The State says that "no judgment has been entered, the jury has not been dismissed, nor has there been any indication to the jury of a ruling that could prejudice the defendants with regard to the dismissed indictments and counts if those are reinstated." In essence, the State is contending that since the judge ruled on matters of law only, retrial is not prohibited and even if the defendants technically were acquitted, since the jury was not discharged, no retrial is required.
In support of the first point, the State relies upon United States v. Maker, 751 F.2d 614 (3rd Cir.1984), cert. den. ___ U.S. ___, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1984), where the Third Circuit allowed the government to appeal the dismissal of an indictment where the trial judge engaged in what the Circuit Court characterized as arguably factual determinations. The trial judge, after the jury was impaneled and sworn, had granted a defense motion to dismiss a conspiracy indictment because the government's proofs would not establish a single conspiratorial scheme. On appeal, defendant argued that the appeal was untenable because the dismissal order represented a "factual" determination based upon counsel's opening statements and a review during argument of some of the government's proposed evidence. The government contended that the trial judge made a legal determination and that double jeopardy was thus not implicated.
The Third Circuit concluded that the government's appeal would be barred only if the trial judge's legal determination *513 about the elements of the conspiracy was correct. United States v. Maker, supra, 751 F.2d at 623. In concluding that the government could appeal, the Circuit court noted that the appeal was not "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Id. at 624 (citing Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978)). Rather it was
a case in which the district court, as the result of a legal error, determined that the government could not prove a fact that is not necessary to support a conviction. To preclude an appeal in this case would deprive the public "of its valued right to `one complete opportunity to convict those who have violated its laws.'" [Id., citing United States v. Scott, 437 U.S. 82 at 100, 98 S.Ct. 2187 at 2198, 57 L.Ed.2d 65 (1978) (quoting Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1975)].
The State distinguishes the result in Lynch based on the trial court's limitation on the State's proofs. The State reads Lynch too narrowly. As noted, the last lines of that opinion state:
The dismissal was a judgment of acquittal. The trial court's interpretation of the statute, though erroneous, led to prohibiting the admission of certain evidence  a ruling which may be "characterized as an erroneous evidentiary ruling," which in turn caused the acquittal for insufficient evidence. "That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the [case] * * *." Sanabria v. United States, supra, 437 U.S. at 68-69, 98 S.Ct. at 2181, 57 L.Ed.2d at 56-57.
We conclude that Lynch is apposite and Maker, as well, is on point as the State argues, but our Supreme Court seemingly has parted company with the Third Circuit on this issue.
A similar split also has occurred between our court and certain federal courts which have considered the issue of whether the continued impanelment of the jury precludes the operation of the double jeopardy bar. In United States v. Lorusso, 695 F.2d 45, 53-54 (2 Cir.1982), the Second Circuit allowed a trial court to substitute a lesser-included offense for a greater offense in a three-count indictment after the trial court had orally dismissed the count including the greater offense. In that case, at the close of the State's evidence, the defendants moved for a judgment of acquittal on the ground of insufficient evidence to convict on the count of the indictment *514 charging possession of heroin with intent to distribute. The trial court orally granted the motion and dismissed that count, as the evidence failed to show intent. The prosecution moved to substitute the charge of simple possession of heroin without the intent. The defendants contended that, since a judgment of acquittal had been entered, the substitution would violate their rights under the Double Jeopardy Clause. The trial judge rejected this argument, pointing out that judgments of acquittal had not been entered, only motions had been granted, and the prosecution could move for reconsideration and reargument. The trial court then submitted the substituted charge to the jury, and defendant was found guilty. Id. at 695 F.2d at 50-51.
Utilizing the above analysis, the Second Circuit affirmed the trial court's actions ruling that there was no constitutional impediment to the trial court's modification of its decision to dismiss the original count where no judgment had been entered, the jury had not been dismissed, and the jury was unaware of a ruling which could prejudice the defendant. 695 F.2d at 54. The key to the court's ruling was that the continuity of the trial had not been broken. Id. See Rowe v. Grizzard, 591 F. Supp. 389, 400-401 (E.D.Va. 1984) ("Prompt reinstatement during the course of a single trial, in which the original jury had not been discharged, does not constitute a `second trial'"), citing United States v. Lorusso; see also United States v. Ellison, 684 F.2d 664 (10th Cir.1982) (2-1 decision granting stay of trial court's judgment of acquittal by use of mandamus); Commonwealth v. Zoller, 507 Pa. 344, 490 A.2d 394 cert. granted sub nom Smalis v. Pennsylvania, ___ U.S. ___, 106 S.Ct. 307, 88 L.Ed.2d 285 (1985) (jeopardy does not attach where dismissal entered at the end of the State's case  nonjury trial).
Our court has recently reached the opposite result, on analogous facts. In State v. Ortiz, 202 N.J. Super. 233 (App.Div. 1985), two co-defendants were tried in a joint proceeding. One defendant, after the State had rested, made a successful motion for acquittal. The trial judge rejected the State's application *515 for a stay of trial pending appeal. Nevertheless, a slight delay in the proceedings allowed the attorneys to appear before an appellate judge who, in concurrence with one other judge of the Appellate Division, summarily reversed the trial judge's dismissal. The trial was thereafter completed and the defendant found guilty. Despite the jury verdicts of guilty, the trial judge granted the motions of both defendants for judgments of acquittal n.o.v. The State sought unsuccessfully at both the trial and appellate levels to stay the judgments n.o.v.; however, its motion for leave to appeal was granted. In holding that the State's appeal both during trial and thereafter violated the Double Jeopardy Clause, we summarily rejected the State's argument that the appeal "was proper because the jury had not been discharged."
In our view, defendants' "absolute shield" from retrial attached immediately to each count upon which the trial judge entered the judgment of acquittal. [Cite omitted]. The mere happenstance that there were other charges which required a continuation of the trial in our judgment does not affect the special weight that attached to the acquittals as it was determined factually that the State had failed to provide sufficient proof to sustain the charges. The bar of double jeopardy should not be affected because the Appellate Division almost instantly summarily reversed the judgment of acquittal or because the jury had not been discharged. [202 N.J. Super. at 241].
While the judge here may have possibly misstated the law concerning what is required of a prosecutor's opening and mistakenly exercised his discretion in not allowing the State to reopen, the dismissals of the indictments operated to acquit the defendants of those charges. The jury having been impaneled and sworn, jeopardy had attached. Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Ortiz, in our opinion, represents the better rule and the State is barred from appealing the judgments even though the jury officially has not been discharged. Because the State's right to appeal is coextensive with new trial preclusions due to the Federal and State Double Jeopardy Clauses, see State v. Lynch, 79 N.J. at 334, we dismiss the appeal.
NOTES
[1] The County Courts were abolished in 1978 and their jurisdiction transferred to the Superior Court. See State v. Barnes, 84 N.J. at 365 n. 1.