672 A.2d 1170

STATE OF NEW JERSEY, PLAINTIFF/RESPONDENT, v.
MICHAEL BLACKNALL, DEFENDANT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 5, 1995—Decided June 29, 1995.

Shebell, P.J.A.D., filed dissenting opinion.

Before Judges SHEBELL, SKILLMAN and WALLACE.

*Laura G. Degnan* argued the cause for appellant (*Lawrence, Leslie & Kain,* attorneys; *Ms. Degnan,* on the brief).

*Deborah Bartolomey,* Deputy Attorney General, argued the cause for respondent; *Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Ms. Bartolomey,* of counsel and on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

Tried by a jury, defendant was found guilty of first degree kidnapping, contrary to *N.J.S.A.* 2C:13–1b (count one); second degree sexual assault, contrary to *N.J.S.A.* 2C:14–2c(1) (count three); and fourth degree criminal sexual contact, contrary to *N.J.S.A.* 2C:14–3b (count four). At the same trial, the jury acquitted defendant of criminal restraint, one count of sexual assault and one count of criminal sexual contact and were unable to reach a decision on another count of sexual assault and another count of criminal sexual contact. The trial court denied defendant's motions for a judgment for acquittal on the kidnapping count, for a new trial, or for the court to interrogate the jurors.

The trial court referred defendant to the Adult Diagnostic and Treatment Center at Avenel for an evaluation where it was determined that defendant did not fall within the purview of *N.J.S.A.* 2C:47–3. The trial court sentenced defendant to a term of eighteen years on count one, a concurrent eight years on count three and a concurrent fourteen months on count four.

On appeal, defendant raises the following arguments set forth in his brief:

POINT I:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL AND DEFENDANT'S MOTION FOR A NEW TRIAL.

A. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT DEFENDANT'S MOTIONS AS TO THE KIDNAPPING CHARGE.

B. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT THE DEFENDANT'S MOTIONS WITH RESPECT TO THE FIRST DEGREE KIDNAPPING CHARGE.

C. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR AN ACQUITTAL AND MOTION FOR A NEW TRIAL WITH RESPECT TO THE SEXUAL ASSAULT CONVICTION.

POINT II:

THE TRIAL COURT'S REINSTATEMENT OF THE FIRST DEGREE KIDNAPPING CHARGE CONSTITUTED REVERSIBLE ERROR BASED UPON DOUBLE JEOPARDY AND BECAUSE THE DEFENDANT'S MOTION TO ACQUIT SHOULD HAVE BEEN GRANTED.

POINT III:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO CHARGE THE JURY REGARDING THE PRIOR INCONSISTENT STATEMENTS OF V.B. AND IN FAILING TO ADMIT THEM INTO EVIDENCE.

POINT IV:

THE TRIAL COURT COMMITTED.REVERSIBLE ERROR IN FAILING TO INTERVIEW THE JURORS PURSUANT TO RULE 1:16–2.

POINT V:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT GRANTING A NEW TRIAL BASED UPON THE TAINTED VERDICT.

We have carefully considered these contentions and all of the arguments urged by defendant, and find that with the sole exception of Point II, they are clearly without merit. No further

discussion with regard to those arguments is necessary. *R.* 2:11–3(e)(2). With regard to Point II, we hold that the Federal and State Double Jeopardy Clauses mandate reversal of the first degree kidnapping conviction and remand for sentencing for second degree kidnapping.[1]

## I

We need not recount the facts at length. The jury could have reasonably found that on October 14, 1989, V.B. was walking home from a friend's house around 5 a.m. Defendant asked her if she wanted a ride home. V.B. said yes. However, instead of driving her home, defendant drove to a dark, dead-end street and parked the car. Defendant asked V.B. to have sex with him but she refused. He told her to get out and walk home. V.B. got out of the car and began to walk home. Defendant pulled up to her, apologized and said that he would give her a ride home. V.B. agreed and got back in the car.

However, instead of taking V.B. home, defendant drove around and then pulled deep into a cornfield knocking the cornstalks down. Defendant turned the motor off and told V.B. he was going to have sex with her. V.B. did not respond other than to shake her head. V.B. testified that she did not know what to say and she was afraid defendant would harm her if she did not comply.

Defendant proceeded to remove V.B.'s sweat shirt, sweat pants, and underpants and ripped her bra off. V.B. did not think anyone would hear her if she screamed. Defendant performed vaginal intercourse upon V.B. V.B. testified that she did not try to escape because she did not know where she was and she was scared. She said she felt like trash but that defendant did not hurt her. At one point, defendant asked her if she would shoot him if she had a

---

[1] Defendant conceded at oral argument that the jury's finding of guilty of first degree kidnapping necessarily included a finding of proof of all the elements of second degree kidnapping, and that if we reverse on double jeopardy grounds, we need only remand for sentencing for second degree kidnapping. We agree.

gun. V.B. responded no. Defendant replied that if he had a gun he would shoot her.

Defendant backed his vehicle out of the cornfield. However, he was not sure how to get home. He stopped at a roadside stand to ask for directions back to Freehold. V.B. sat in the car with her head down crying, but did not ask for help. After receiving directions to Freehold defendant drove to another location and parked the car. V.B. said that defendant then forced her to have oral sex with him. Defendant finally dropped V.B. off near her house and said, "This is between me and you."

Defendant testified and said that V.B. had consensual sex with him in the cornfield. He said that V.B. got upset when he said he would not pay her. Defendant denied engaging in any sexual act with V.B. after the episode in the cornfield. He said he dropped V.B. off in front of her residence.

## II

We turn now to defendant's double jeopardy argument. At the close of the State's case, defendant moved to dismiss all of the counts in the indictment. In response to defendant's motion, the trial judge stated:

> The court is required to review all the evidence in the most favorable light of the State for purpose of deciding the motion and as to the counts in the indictment that refer to the sexual assault the testimony from the victim was that there was intercourse, fellatio all committed without her consent and so I find that [for] the purpose of the motion that those charges are sufficient to be reviewed by the jury as fact issue ultimately for the jury to determine but there's sufficient evidence by the victim's testimony that the offenses did occur.

> Regarding the kidnapping offense the statute 2C:13–1(B) provides a kidnapping is a second degree offense unless the state proves beyond a reasonable doubt that the [victim] was harmed or [not] released in a safe place. She was released in a safe place so that would not make it a first degree offense. The issue is whether or not the emotional harm would be sufficient for the jury to consider a first degree kidnapping.

After a short recess to review *State v. Tronchin*, 223 *N.J.Super.* 586, 539 *A*.2d 330 (App.Div.1988), the trial court concluded:

> So what we have here in our case is taking testimony of the victim that the defendant asked her if she wanted a ride home, she indicated that she did, she thought she was going to be taken home and they wound up in a cornfield in a remote area and ... [she] refused to have sex according to her version of what took place and the defendant used force and they had intercourse out in that cornfield.
>
> So that I find there's sufficient circumstances to establish the elements of kidnapping, that is, taking the victim unlawfully and confining the victim for a substantial period of time *but I don't find any circumstances in our case to establish any harm to the [victim] and, therefore, I'm going to rule that it will be presented to the jury as a second degree offense.*
>
> [Emphasis supplied.]

The prosecutor argued that the emotional injury that results from sexual assault is "harm" under the statute and the testimony of V.B. that she was crying, shaking and frightened was sufficient to show harm. The trial judge was not convinced and replied:

> I'm going to stand by my ruling. I find the circumstances in this case are quite unique. She indicated clearly that she was not harmed. She also indicated that she le[t] him do what he had to do and all she wanted to do was to get home and there are no further circumstances that would permit a reasonable jury to find based on her own statements as to what took place that she sustained an emotional injury and I'll submit [it as] a second degree offense.

The trial judge directed defendant to proceed with his case. Defendant then took the witness stand and offered his version of the events. Near the end of defendant's direct testimony, the trial judge recessed for lunch. Following the lunch recess, and prior to the conclusion of defendant's direct testimony, the trial judge stated that he reconsidered his earlier ruling and now concluded that the State presented sufficient evidence to present a jury question whether defendant released V.B. unharmed. Consequently, contrary to his earlier ruling, the trial judge said he would submit the first degree kidnapping count to the jury. As noted above, the jury found defendant guilty of first degree kidnapping, second degree sexual assault, and fourth degree criminal sexual contact.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution is applicable to the States. *Benton v. Maryland*, 395 *U.S.* 784, 794, 89 *S.Ct.* 2056, 2062, 23 *L.Ed.*2d 707, 716 (1969). That clause provides that no "person [shall] be

subject for the same offence to be twice put in jeopardy of life or limb." *U.S. Const. amend. V.* The double jeopardy provisions of both the United States Constitution and the New Jersey Constitution protect against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *United States v. DiFrancesco,* 449 *U.S.* 117, 129, 101 *S.Ct.* 426, 433, 66 *L.Ed.*2d 328, 340 (1980); *State v. Lynch,* 79 *N.J.* 327, 340, 399 *A.*2d 629 (1979).

The issue here is whether the trial judge may reinstate a first degree kidnapping charge after he has ruled at the close of the State's case that he would not charge first degree kidnapping but would charge only second degree kidnapping. More specifically, may the trial judge reinstate the first degree offense after the defendant takes the witness stand and testifies following the trial judge's ruling that the State failed to present sufficient evidence to warrant a charge of first degree kidnapping.

█ Initially, we reject the State's argument that the Double Jeopardy Clause is not implicated because the trial judge merely rendered an oral ruling that he changed a short while later. "[W]hat constitutes an acquittal by a trial court is not controlled by the form of the judge's action." *State v. Barnes,* 84 *N.J.* 362, 371, 420 *A.*2d 303 (1980). In *Barnes,* our Supreme Court cited *United States v. Martin Linen Supply Co.,* 430 *U.S.* 564, 571, 97 *S.Ct.* 1349, 1355, 51 *L.Ed.*2d 642, 651 (1977), *quoted in State v. Barnes, supra,* 84 *N.J.* at 371, 420 *A.*2d 303, for the proposition that "we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." In our view, the trial judge's ruling was a finding that the State had not presented sufficient evidence of the element of harm in order to submit first degree kidnapping to the jury.

The State further directs our attention to several federal cases to argue that the trial judge made an interlocutory decision which could be changed during the trial without violating double jeopar-

dy principles. We recognize that there is federal authority to support the State's argument. In *United States v. LoRusso,* 695 F.2d 45, 50 (2d Cir.1982), *cert. denied sub nom., Errante v. United States,* 460 *U.S.* 1070, 103 *S.Ct.* 1525, 75 *L.Ed.*2d 948 (1983), the district court orally granted defendants' motions for acquittal at the end of the government's case based on insufficiency of the evidence to prove intent to distribute a controlled dangerous substance. The government immediately moved to have the court submit simple possession, a lesser included offense of the dismissed count, to the jury. *Ibid.* The next day the district court granted the government's motion. *Id.* at 51.

On appeal, the Second Circuit concluded that double jeopardy did not bar the submission of the lesser included offense because the oral acquittal was an interlocutory order that the district court could reconsider at any time prior to the entry of judgment and the decision to submit the lesser included offense to the jury occurred prior to dismissal of the jury or disruption in the proceedings. *Id.* at 52–4. The court noted that it was not suggesting "that entry of a judgment ... is a prerequisite to the termination of the prosecution for double jeopardy purposes," but the court explained that it mentioned the absence of a judgment "merely to emphasize the inchoate nature of the oral decision...." *Id.* at 54.

In *United States v. Maker,* 751 F.2d 614, 615 (3d Cir.1984), *cert. denied,* 472 *U.S.* 1017, 105 *S.Ct.* 3479, 87 *L.Ed.*2d 614 (1985), defendant and a codefendant were charged with a single scheme to defraud regarding insurance claims arising out of two automobile accidents in which defendant was involved. The district court dismissed the indictment after the jury was impanelled and the government had made its opening statement. The court determined that the government must prove that the entire scheme, both the first and second accident, was planned at the outset, and based on the opening statement and other documents in the record, the government could not meet its burden. *Id.* at 615, 618–20. On appeal, the Third Circuit stated that "[t]he govern-

ment's appeal in this case is barred only if the district court's legal determination about the elements of a single scheme conviction is correct." *Id.* at 623. The Third Circuit concluded that the district court erred in its determination of the elements of the crime and therefore, the government's appeal of the dismissal did not violate double jeopardy principles. *Id.* at 623–24.

The Ninth Circuit has taken a more cautious approach. In *United States v. Blount,* 34 *F.*3d 865, 866–67 (9th Cir.1994), after the government rested its case, the trial court granted defendant's motion for a judgment of acquittal on the ground that the government failed to establish damage in excess of $10,000 which was an element of the crime of felony tree spiking, one of the crimes charged. Before ruling on the motion, the court offered to charge a lesser included misdemeanor. *Ibid.* The government refused that concession and took an all or nothing approach. *Id.* at 867. The trial court informed the jury that the felony tree spiking counts were no longer a part of the case. *Ibid.* The following morning, after defendant and a co-defendant proceeded with their cases regarding the remaining counts and the co-defendant rested, the trial court reinstated the counts as lesser included misdemeanors of the felony counts it dismissed the previous day. *Ibid.* Defendant was convicted of one of the reinstated counts. *Ibid.*

On appeal, the Ninth Circuit concluded that after the trial court "orally granted [defendant's] motion for acquittal on the [felony tree spiking] counts and informed the jury of its decision, preserving no element of those charges for submission to the jury, its ruling of acquittal ended [defendant's] jeopardy on the charged felony and any lesser included offenses." *Id.* at 868. The *Blount* court distinguished *LoRusso,* by noting that the defendant in *LoRusso* "was not subject to double jeopardy because the motion for modification followed the court's decision 'promptly,' and the court did not give any indication to the jury of its ruling." *Ibid.*

Our court has also addressed this issue. In *State v. Ortiz,* 202 *N.J.Super.* 233, 237, 494 *A.*2d 822 (App.Div.), *certif. denied,* 102 *N.J.* 300, 508 *A.*2d 187 (1985), defendants were tried for conspira-

cy, murder, hindering apprehension, tampering with a witness, weapons offenses and hindering prosecution by intimidation. After the State rested, the trial judge granted one defendant's motion for acquittal on the conspiracy and murder counts and dismissed the other defendant's conspiracy count. *Ibid.* The State was able to take an interlocutory appeal and we summarily reversed the trial judge's dismissal while preserving "defendant[']s right to move for a judgment of acquittal pursuant to *R.* 3:18–2 after the return of any guilty verdict." *Id.* at 238, 494 A.2d 822. The trial continued and the jury returned guilty verdicts on all counts. *Ibid.* The trial judge then granted the motion of both defendants for judgment of acquittal n.o.v. on the conspiracy convictions and granted a judgment of acquittal n.o.v. for one defendant on her murder conviction. *Ibid.* The State appealed and we dismissed based on double jeopardy grounds. We held that "[t]he bar of double jeopardy should not be affected because the Appellate Division almost instantly summarily reversed the judgment of acquittal or because the jury had not been discharged." *Id.* at 241, 494 A.2d 822. *See also State in the Interest of C.K.,* 198 *N.J.Super.* 290, 294–95, 486 A.2d 1284 (App.Div.1984) (trial judge's adjudication of delinquency after initially finding defendant not guilty based on an erroneously perceived deficiency of State's evidence was prohibited by the Double Jeopardy Clause).

In *State v. Lynch, supra,* 79 *N.J.* at 337, 399 A.2d 629, the trial court incorrectly interpreted an aiding and abetting statute to require proof that defendant knew that the person assisted committed an enumerated crime. Based on an erroneous statutory interpretation, following opening arguments the trial court dismissed the indictment. *Id.* at 333–34, 399 A.2d 629. On appeal our Supreme Court concluded that:

This action was equivalent to the granting of a motion to dismiss at the end of the State's case. It saw no need to proceed formally through a trial. The jury having been impaneled and sworn, jeopardy had attached. The trial court's dismissal reflected an adjudication on the merits. The case was "over." The dismissal was a judgment of acquittal. The trial court's interpretation of the statute, though erroneous, led to prohibiting the admission of certain evidence—a

ruling which may be "characterized as an erroneous evidentiary ruling," which in turn caused the acquittal for insufficient evidence. "That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the [case] * * *."

[*Id.* at 343, 399 *A.*2d 629 (citing *Sanabria v. United States,* 437 *U.S.* 54, 68–9, 98 *S.Ct.* 2170, 2181, 57 *L.Ed.*2d 43, 56–7 (1978).]

Similarly, in *State v. Portock,* 205 *N.J.Super.* 499, 502, 501 *A.*2d 551 (App.Div.1985), we addressed the State's appeal from a dismissal of certain counts of a multi-count indictment following the prosecutor's opening statements. We found *Lynch* controlling and concluded that the dismissals of the indictments, even if the trial judge may have erred, operated to acquit the defendants of those charges. *Id.* at 515, 501 *A.*2d 551. Further, we noted that there is a divergence between our Supreme Court and some federal cases on the issue of whether the principles of double jeopardy are offended where the trial court is mistaken on the law in dismissing a count in the indictment, no judgment has been entered, the jury has not been discharged, and the court reinstates the count or a lesser included offense. *Id.* at 512–13, 501 *A.*2d 551. We expressed the view that "*Ortiz,* . . . represents the better rule and the State is barred from appealing the judgments even though the jury officially had not been discharged." *Id.* at 515, 501 *A.*2d 551.

█ We are convinced that the present case is controlled by the principles espoused in *Lynch, Ortiz,* and *Portock.* Consequently, once the trial judge stated at the conclusion of the State's case that he would not charge first degree kidnapping and the defendant took the stand to testify in his defense, the trial judge's decision acted as an acquittal of first degree kidnapping. While the trial judge may have mistakenly dismissed the first degree kidnapping charge, jeopardy had attached and the dismissal was a bar to later reinstatement of the first degree charge. Consequently, we are constrained to reverse defendant's conviction of first degree kidnapping and remand for sentencing for second degree kidnapping.

## III

In summary, except for the conviction for first degree kidnapping, we affirm defendant's convictions. We reverse the first degree kidnapping conviction and remand for entry of a judgment for second degree kidnapping and sentencing for this offense. We also vacate the sentence imposed upon defendant for sexual assault and sexual contact, so that the trial court may have the opportunity to consider resentencing defendant for these offenses in light of our reversal of his conviction for first degree kidnapping. *See State v. Rodriguez*, 97 *N.J.* 263, 273–77, 478 *A.*2d 408 (1984); *State v. Espino*, 264 *N.J.Super.* 62, 72–73, 624 *A.*2d 27 (App.Div.1993).

SHEBELL, P.J.A.D., dissenting.

The majority has erred in not recognizing that the trial judge's ruling was not an acquittal based on the facts. Rather, it was an absurd misapplication of the law, which, fortunately he was able to correct during the trial. The defendant can show no prejudice based on the judge's error.

At trial, the judge and the State argued as to "whether or not the emotional harm [resulting from the sexual assault] would be sufficient for the jury to consider a first degree kidnapping." This was not the issue. The judge correctly recognized that the State's evidence that there had been intercourse and fellatio committed without the victim's consent, during the period of the kidnapping, had to be accepted for purposes of ruling on defendant's motion. Having recognized that those facts must be accepted as the foundation for the State's case, the judge should then have concluded that the sexual assaults themselves constituted harm within the meaning of *N.J.S.A.* 2C:13–1b and indicated that first degree kidnapping would be charged to the jury. Instead, he erroneously advised the parties that he would not charge first degree kidnapping.

In any event, not only was no judgment of acquittal entered, but more importantly, no factual determination of the trial judge

compelled or even warranted acquittal. *See United States v. DiFrancesco,* 449 *U.S.* 117, 129, 101 *S.Ct.* 426, 433, 66 *L.Ed.*2d 328, 340 (1980). Indeed, quite the contrary was true. Under the facts that the trial judge correctly determined must be considered under *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967), first degree kidnapping was clearly the appropriate offense. I do not interpret any of the Federal or State authorities cited by the majority as requiring a finding of double jeopardy in these circumstances. I would affirm defendant's conviction for first degree kidnapping.